RECEIVED

JUN 1 2 2006

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

*2:06cv292-mHT*

## AMENDED CLAIMS AND ARGUMENTS

**I. FIRST. RETROACTIVE APPLICATION OF THE ACT UPON YOUR PLAINTIFF IS IN VIOLATION OF HIS FOURTEENTH AMENDMENT RIGHT TO BE TREATED EQUALLY AS A JUVENILE UNDER THE LAW AND TO BE AFFORDED DUE PROCESS OF THE LAW AS A JUVENILE OFFENDER.**

First, Your Plaintiff does not suggest that age is a "suspect class." Your Plaintiff would argue that, as applied to him, the retroactive application of the Alabama Community Notification Act ("the Act") denies him equal protection of the law as well as due process of law as guaranteed by the Fourteenth Amendment. It is his contention that *if* the Act is applied to him he should receive the same protections as a juvenile or a youthful offender because at the time of the allegation (1983) he was a juvenile (17 years of age).

Unquestionably, the provision of the Act regarding the treatment of juveniles and adults are disparate. The Act allows for juveniles and youthful offenders whom are convicted of crimes of sexual deviate behavior to be treated compassionately compared to adults. Once a juvenile reaches the age of majority his registration requirements are narrowed. Reaching the age of majority, juveniles' responsibilities under the Act are limited to notifying the responsible

3


SCANNED
DMN 12:22 6/13

agency of their actual place of residence and employment and their intent to transfer either; public dissemination is forbidden.[1]   See §15-20-29(c), *Ala.Code* 1975.   Importantly, "[a] juvenile criminal sex offender, whether having been incarcerated or not, who resides within this state, shall be subject to this article for a period of ten years[.]"   See §15-20-33(b), *Ala.Code* 1975.   After ten years, the offender is pardoned from any registering requirements. Having been a juvenile at the time of the allegation, Your Plaintiff should be treated as a juvenile.

Your Plaintiff was born January 15, 1966, thus in 1983 he would have been 17 years old.   Alabama defines a juvenile offender as "[a]n individual under the age of 18, or under 19 years of age and before the juvenile court for a matter arising before that individual's 18th birthday."   § 12-15-1(3), *Ala.Code* 1975.   See also, *Cleckler v. State*, 523 So. 2d 1121 (Ala.Crim.App.1987) (Defendant's age for purposes of juvenile court jurisdiction is determined at the time of the alleged crime rather than at the time of trial.).

The allegation against Your Plaintiff was made in 1984; alleging that the incident occurred in 1983.   At any time, Florida authorities could have easily

---

[1] See *State v. C.M.*, 746 So.2d 410 (Ala.Crim.App.1999) wherein the Court held that the Act, as applied to juveniles was in violation of the Ex Post Facto Clause and Equal Protection Clause.

arrested Your Plaintiff. They choose not. As Your Plaintiff set forth in his initial complaint, his address and employer were listed on the warrant. <u>See</u> Pl. Comp. at pp.7-8, ¶¶ 1-4. During the eight years that the warrant remained pending against Your Plaintiff, he had been incarcerated in the Mobile City, and County Jails, the ADOC, on probation and parole; at all times providing the same address as listed on the Florida warrant. Your Plaintiff should not be held to be an adult simply because the State of Florida failed to timely serve the warrant when he was a juvenile.

As Your Plaintiff has stated, the burden *should* *not* lie upon him, but upon the Defendants. Your Plaintiff avers that the Defendants have the burden of demonstrating why they are treating Your Plaintiff as an adult when clearly he was a juvenile at the time of the offense.

## II. THE ALABAMA COMMUNITY NOTIFICATION ACT IMPOSES CRUEL AND UNUSUAL PUNISHMENT AND DENIES YOUR PLAINTIFF FOURTEENTH AMENDMENT PROTECTIONS OF SUBSTANTIVE AND PROCEDURAL DUE PROCESS.

Your Plaintiff would argue that §15-20-22(a)(1), *AlaCode* 1975 is overly broad and allows for perpetual incarceration in violation of his Eighth Amendment right that "no cruel and unusual punishments shall be imposed,"

and his Fourteenth Amendment right substantive and procedural due process. It is Your Plaintiff's contention that the Act's over broadness allows for incessant incarceration simply because a person is without financial and economical means; being destitute becomes a felony offense.

A State, pursuant to its police power, may of course imprison convicted criminals for the purposes of deterrence and retribution. But there are constitutional limitations on the conduct that a State may criminalize. See, e.g., _Robinson v California_, 370 US 660 (1962). A State may not criminalize involuntary homelessness without some attached criminal activity.

Section 15-20-22(a)(1) states:

() Forty-five days prior to the release of an adult criminal sex offender, the following shall apply:

() The responsible agency shall require the adult criminal sex offender to declare, in writing or by electronic means approved by the Director of the Department of Public Safety, the actual address at which he or she will reside or live upon release and the name and physical address of his or her employer, if any. _Any failure to provide timely and accurate declarations shall constitute a Class C felony. Any adult criminal sex offender in violation of this section shall be ineligible for release on probation or parole. Any adult criminal sex offender in violation of this section who is to be released due to the expiration of his or her sentence shall be charged with violating this section and, upon release, shall immediately be remanded to the custody_

6

> *of the sheriff of the county in which the violation occurred. Any adult criminal sex offender charged with violating this section may only be released on bond on the condition that the offender is in compliance with this section before being released.*

Section 15-20-22(a)(1), *supra* (emphasis added).

Your Plaintiffs contends that the State applies the Act to homeless individuals as part of a custom and practice of perpetual incarceration to those with no means of obtaining suitable housing. As written and applied, a person without financial resources has no way of purging himself from a violation.

Based on *Robinson*, courts have overturned vagrancy laws because they punish status or condition; not conduct. In *Wheeler v. Goodman*, a district court found a vagrancy law to be constitutionally invalid because it punished mere status. 306 F. Supp. 58, 64 (W.D.N.C. 1969). Similarly, in *Headley v. Selkowitz*, 171 So.2d 368 (Fla.1965), the Florida Supreme Court stated that a vagrancy statute, even if facially valid, should not be applied to "innocent victims of misfortune" who appear to be vagrants, but "who are not such either by choice or intentional conduct." Id. at 370; see also *Goldman v. Knecht*, 295 F. Supp. 897, 907-08 (D.Colo.1969) (finding vagrancy statute that punished status unconstitutional in violation of fourteenth amendment's substantive due process limitation); *Parker*

7

*v. Municipal Judge*, 83 Nev. 214, 427 P.2d 642, 644 (Nev. 1967) ("It is simply not a crime to be unemployed, without funds, and in a public place. To punish the unfortunate for this circumstance debases society."); *Hayes v. Municipal Court*, 487 P.2d 974, 981 (Okla.Crim.App.1971) (quoting Parker with approval); *Alegata v. Commonwealth*, 353 Mass. 287, 231 N.E.2d 201, 207 (Mass. 1967) ("Idleness and poverty should not be treated as a criminal offense."). Quoting in part, *Pottinger v. City of Miami*, 810 F. Supp. 1551, 1562 (S.D. Fla. 1992). Again, under the provisions of §15-20-22(a)(1), voluntariness or involuntariness is not a decisive factor; one is as culpable as the other.

The statutory provision in contention criminalizes and punishes status - involuntary homelessness – without any attached criminal conduct. The legislature's stated intent seems to suggest that the Act is merely a "procedural" mechanism, which is "civil" in nature. Regardless of whether the intent of the legislature is "civil" or "criminal," a person must be afforded substantive and procedural due process and regardless of the process given, criminalizing innocent conduct – homelessness – the Act provisions defy every concept of the Eighth and Fourteenth Amendments.

Your Plaintiff avers that the Act is so punitive in its purpose and effect that it negates the legislature's inferred intent that the Act is merely a procedural and civil statute. For this reason, Your Plaintiff addresses the civil and criminal infirmities.

States, in certain narrow circumstances, are allowed the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety. The United States Supreme Court has upheld involuntary commitment statutes provided the confinement takes place pursuant to proper procedures and evidentiary standards. See *Kansas v Hendricks*, 521 US 346 (1997). See also, *Foucha v Louisiana*, 504 US 71 (1992); *Addington v Texas*, 441 US 418 (1979).

The challenged Act requires no finding of dangerousness, either to oneself or to others, nor does it require a finding of "mental illness" or "mental abnormality." Incarceration is initiated simply because a person is unable *"to declare, in writing or by electronic means ..., the actual address at which he or she will reside or live upon release... ."* The fact that a person previously committed a

9

criminal offense, standing alone, cannot warrant indefinite incarceration after the termination of that sentence.

Alabama law provides both substantive and procedural due process before a person is civilly committed.

> () Any civil commitment proceedings are to be conducted in accordance with the following constitutional due process standards:
>
> (7) No person shall be committed unless the judge finds the following minimum standards for civil commitment have been met:
>
> . That he is mentally ill;
>
> b. That he poses a real and present threat of substantial harm to himself or to others;
>
> c. That the danger has been evidenced by some factual basis to support the facility staffs' recommendation that recommitment, commitment or continued custody is necessary for the person's health and well-being. In order for a person to be committed or recommitted to the custody of the Department of Mental Health and Mental Retardation, the evidence presented must clearly and convincingly lay a factual basis for the conclusion that continued custody is necessary;
>
> d. That there is treatment available for the illness diagnosed or that confinement of the dangerous but untreatable individual is necessary for his and the community's safety and well-being; and

10

e. That commitment or recommitment is the least restrictive alternative necessary and available for treatment of the person's illness.

(8) The necessity for commitment must be proved by evidence which is clear, unequivocal and convincing.

(9) At the hearing, the subject shall have the right to offer evidence, to be confronted with the witnesses against him and to cross-examine them and shall have the privilege against self-incrimination. The rules of evidence applicable in other judicial proceedings in this state shall be followed in involuntary civil commitment proceedings.

§22-52-36(7)(a-e), (8) & (9), *Ala.Code* 1975. See also, §22-52-10.4, *Ala.Code* 1975.

The Act affords no substantive or procedural protections. There is no finding of present dangerousness, nor is a finding of a mental illness, both being essential requirements of involuntary civil commitment under Alabama law. The only finding of fact is that a person is without housing. Without affording the protection of §22-52-36(7)(a-e), (8) & (9), the Act simply punishes one for being homeless; distinguishing between persons with means to afford housing and those who are destitute.

Your Plaintiff avers that the Act is so punitive in its purpose and effect that it negates the legislature's inferred intent that the Act is "civil" in nature. The Act

11

represents all the traits of a penal and criminal statute. It is evident by the process in which the charges are brought (signing of a complaint); the arrest of the person (by warrant); and prosecution (information or indictment). See §§15-7-1, 15-7-3, and 15-8-1 – 2, *Ala.Code* 1975. See also, Rule 2.1 – 3.1, *A.R.Crim.P.* Moreover, an exhaustive research has shown no "civil" law that allows for a "life" sentence to be served in the Alabama Department of Corrections.

Your Plaintiff does not suggest that persons properly subjected to the Act are to roam freely, or live abroad without supervision. What Your Plaintiff does contend is that because of the lack of resources for sex offenders, e.g., halfway houses, homeless shelters, and government assistance upon release, that the State should have less restrictive means than incarceration that allows a person an opportunity to comply with the law before being subject to criminal prosecution and punishment simply because they are unfortunate.

The fact is §15-20-22(a)(1) is a legislative trap upon the poor and homeless of this State. The legislature has guaranteed the State a conviction for a limited class of persons – poor and homeless - when it excluded any finding of mental culpability. "*Any failure to provide timely and accurate declarations shall constitute a*

*Class C felony."* <u>Ibid</u> (emphasis added). As discovery will show, the Defendants are routinely arresting and prosecuting persons not because they are refusing to provide authorities with an address, but because they have no means of complying the law because of they are destitute; they have no address.

As related to Your Plaintiff, he has presently been denied release to his residence of 35 years. It is Your Plaintiff's contention that unless a person has been afforded the protections of substantive and procedural due process – determining he is currently dangerous and suffers from a mental illness – permanent incarceration is inappropriate, thus is an infliction of cruel and unusual punishment.

### III. THE RETROACTIVE APPLICATION OF THE ACT UPON YOUR PLAINTIFF IS IN VIOLATION OF HIS FOURTEENTH AMENDMENT RIGHT TO ENGAGE IN AND MAINTAIN EMPLOYMENT IN A LAWFUL OCCUPATION.

Your Plaintiff would argue, as applied to him, the retroactive application of the Act is overly broad and violates his Fourteenth Amendment right to engage in and maintain lawful employment. Among the rights of liberty and property protected by the provision of §1 of the 14th Amendment to the Constitution of the United States; no state shall "deprive any person of life,

13

liberty, or property without due process of law." The right to the acquisition and disposition of property, the right to labor in any lawful employment, and the right to enter into any lawful contract in reference to property or labor are fundamental rights which are protected by the Fourteenth Amendment. See Knoxville Iron Co. v. Harbison, 183 U.S. 13 (1901). He argues that the retroactive application will unconstitutionally restrict, if not prohibit him from continuing in his career because of the employment restrictions on *school, or child care facility, Ala.Code* 1975.

Section 15-20-26 states:

(a)    Unless otherwise exempted by law, no adult criminal sex offender shall establish a residence or any other living accommodation *or accept employment within 2,000 feet of the property on which any school or child care facility is located.*

(g) No adult criminal sex offender, after having been convicted of a criminal sex offense involving a child, *shall accept, maintain, or carry on any employment or vocation at or within 500 feet of a school, child care facility, playground, park, athletic field or facility, or any other business or facility having a principal purpose of caring for, educating, or entertaining minors.*

(h)    An adult criminal sex offender who knowingly violates the provisions of this section shall be guilty of a Class C felony.

Section 15-20-26(a)(g)(h), *Ala.Code* 1975 (emphasis added).

14

First, the subdivisions (a) and (g) are conflicting.  Subdivision (a) prohibits "*employment within 2,000 feet of the property on which any school or child care facility is located.*"  *Id.*  Advancing into the same provision subdivision (g) prohibits "*any employment or vocation at or within 500 feet of a school, child care facility, playground, park, athletic field or facility, or any other business or facility having a principal purpose of caring for, educating, or entertaining minors.*"  *Id.*  This ambiguity and vagueness allow for criminal prosecution (up to a life sentence) for accepting employment when a person is within either 500 feet or 2000 feet of *school, child care facility;* a difference of 1500 feet; over a quarter mile.

Vagueness arises when a statute is so unclear as to what conduct is applicable that persons of common intelligence must guess at its meaning and differ as to its application.  *See Broadrick v. Oklahoma,* 413 U.S. 601, 607 (1973).  Looking at the variance between the two, "500 feet" and "2000 feet," even a person of above average intelligence would have to guess at its meaning because of the conflicting prohibited range.  Thus, on its face §15-20-26(a) and (g) is unconstitutionally vague because it lacks the specificity required to inform a person of when his acts place him in violation of the law.

15

Secondly, as discovery will show, in a metropolitan as large as Mobile County, the employment restriction will cause Your Plaintiff's employment to be restricted to defined areas of the county.    Your Plaintiff has worked in his vocation for more than twenty years.    Never before has the State placed restriction upon Your Plaintiff's employment.    Now, being incarcerated on drug possession charges the Defendants are attempting to use and apply (retroactively) the Act that will curtail employment rights previously enjoyed. "Under that amendment, nothing is more clearly settled than that it is beyond the power of a state, 'under the guise of protecting the public, arbitrarily [to] interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them.'" *New State Ice Co. v. Liebmann,* 285 U. S. 262, 278 (1932).    A relevant fact (being ignored by the Defendants) is that Your Plaintiff has worked without restrictions before and after the entering of the plea of *nolo contendere.*    Moreover, knowing of the allegation and the plea entered no one has even mentioned, much less mandated the restrictions upon where Your Plaintiff can and cannot work.

16

# IV. THE RETROACTIVE APPLICATION OF THE ACT UPON YOUR PLAINTIFF IS A VIOLATION OF HIS FIRST AMENDMENT RIGHT FREEDOM OF ASSOCIATION, AND HIS RIGHT TO PEACEFULLY ASSEMBLE WITHOUT GOVERNMENT INFRINGEMENT OR INTRUSION.

Your Plaintiff would argue, as applied to him, the retroactive application of the Act is overly broad and violates his First Amendment right to freedom of association. He argues that his association with his family (direct relatives, stepchildren and step grandchildren), and friends, will be curtailed, if not forbidden. Your Plaintiff would also be forbidden from fathering additional children, or to remarry a woman who has children that are under the age of eighteen. In addition, his individual right to exercise his right to peacefully assemble will be restricted by the State, all being protected by the First Amendment. Not one of these protected rights was curtailed, nor were they punishable as a felony offense prior to Your Plaintiff's present drug conviction (*ex post facto*).

There exist two different forms of association which are granted special protection under the First Amendment: "intimate association' and 'expressive association.'" *McCabe v. Sharrett*, 12 F.3d 1558, 1562-62 (11th Cir. 1994). In *Roberts v. United States Jaycees*, 468 U.S. 609 (1984), the Supreme Court explained that the

right of *intimate association* - the freedom to enter into and maintain certain intimate human relationships such as marriage, childbirth, the raising and education of children and cohabitation with one's relatives - is protected from governmental intrusion as a fundamental aspect of personal liberty. <u>Roberts</u>, 468 U.S. at 617-18. The right of *expressive association*, on the other hand, is the freedom to associate for the purpose of engaging in those activities protected by the First Amendment - speech, assembly, petition for the redress of grievances, and the exercise of religion. <u>Roberts</u>, 468 U.S. at 618. Your Plaintiff addresses each in turn.

## a). *THE RETROACTIVE APPLICATION OF THE ACT IS IN VIOLATION OF YOUR PLAINTIFF'S RIGHT TO MAINTAIN HIS ESTABLISHED INTIMATE RELATIONSHIPS WITH HIS CHILDREN AND GRANDCHILDREN.*

The right of intimate association encompasses personal relationships that "attend the creation and sustenance of a family." <u>McCabe</u>, 12 F.3d at 1563. "Whether the right extends to other relationships depends on the extent to which those attachments share the qualities distinctive to family relationships, such as 'relative smallness' and 'seclusion from others in critical aspects of the relationship.'" <u>Id</u>. "At a minimum, the right of intimate association encompasses

18

the personal relationships that attend the creation and sustenance of a family--marriage, childbirth, the raising and education of children, and cohabitation with one's relatives." _McCabe_, 12 F.3d at 1563; (citing _Roberts_, 468 U.S. at 617-18 (1984)). It is Your Plaintiff's assertion that the Act, as applied to him, will restrain and/or refrains him from continuing his established relationships with friends, and family.

Your Plaintiff has three sons that are teenagers. He also has two stepdaughters, one of which Your Plaintiff has been a father to since the child's infancy. The second is the child of his fiancé.[2] Both stepdaughters are now adults and have children of their own; Your Plaintiff's grandchildren. Your Plaintiff avers the Act will unconstitutionally forbid him from maintaining the relationship with his sons and will unconstitutionally restrain and possibly forbid the established relationships with his grandchildren.

The provision of law that is in violation of his First Amendment right to intimate association is §15-20-26, _Ala.Code_ 1975, which states in pertinent part that:

---

[2] Your Plaintiff's relationship with his fiancé and her daughter was established in 1994 and has been on going to this present date.

(c) No adult criminal sex offender shall establish a residence or any other living accommodation where a minor resides. Notwithstanding the foregoing, an adult criminal sex offender may reside with a minor if the adult criminal sex offender is the parent, grandparent, or stepparent of the minor, *unless one of the following conditions applies*:

(4) The adult criminal sex offender has ever been convicted of any criminal sex offense involving a child, regardless of whether the offender was related to or shared a residence with the child victim.

(h) An adult criminal sex offender who knowingly violates the provisions of this section shall be guilty of a Class C felony.

§15-20-26(c)(4), *supra* (emphasis added).

A person placed under the Act is prohibited and will be prosecuted for "establish[ing] a residence or any other living accommodation where a minor resides. *Id*. The Act states that:

"(b) ... an adult criminal sex offender shall be deemed to have established a new residence in any of the following circumstances:

(1) Whenever that adult criminal sex offender is domiciled for three consecutive days or more.

(2) Whenever that adult criminal sex offender is domiciled following his or her release, regardless of whether that criminal sex offender has been domiciled at the same location prior to the time of conviction.

20

(3) Whenever an adult criminal sex offender spends 10 or more aggregate days at a location during a calendar month."

§15-20-23(b)(1)(2)(3), *Ala.Code* 1975.

The punishment for any violation of §15-20-23 "shall constitute a Class C felony."

It should be noted that §15-20-26 requires a finding of mental culpability; *"knowingly,"* §15-20-23 does not. Thus, allowing the State to criminally prosecute when a person acts either *knowingly* or *unintentionally.* In essence, the legislature has enacted a legislative trap.

The Act will forbid Your Plaintiff from living with his own children. In addition, it will not allow his children or his grandchildren to sleep over for "three consecutive days or more" or "10 or more aggregate days . . . during a calendar month," as grandchildren love to sleep over or vacation to be spoiled by their grandparents. Invoking such restrictions upon Your Plaintiff is not only an intrusion upon his First Amendment right to intimate association, but it should be looked upon as retroactive punishment for an allegation made a quarter of a century ago (*ex post facto*).

21

*Roberts* teaches that the right of intimate association--the freedom to choose to enter into and maintain certain intimate human relationships--is protected from undue governmental intrusion as a fundamental aspect of personal liberty. *Roberts,* 468 U.S. at 617-20.  As applied to Your Plaintiff, the Act is an undue governmental intrusion upon his fundamental right to association and personal liberties as guaranteed and protected by the First and Fourteenth Amendments.

Your Plaintiff pleaded *nolo contendere* in 1992 to an 8-year-old warrant for which he had no knowledge.  Before and after entering the plea of *nolo contendere* Your Plaintiff has nurtured, cared and provided for his children and grandchildren.   He has been active in their education and extracurricular activities.  He has been active in baseball, football and other activities.  They have lived together just as any other American family has done.  Now, 26 years after the allegation, 14 years after the plea was entered, the State is intruding into his constitutional protected relationship with his children and grandchildren with the threat of a life sentence if he dares violate their overly broad statutes.

22

It cannot be ignored that Your Plaintiff was never given the opportunity to prove his innocence. The State seems to suggest that this is of no consequence; suggesting that one injustice is to be carrying into another, and then another, thus becoming perpetual. As Your Plaintiff respectfully requested of this Honorable Court in his initial complaint, the burden should lay with the Defendants, not Your Plaintiff. The Defendants should be required to show not only how the Act will not intrude upon his First Amendment right to maintain his intimate relationships, but also why should they should be allowed to do so after the passing of 14 years. Your Plaintiff has repeatedly asked the latter question, but the Respondents seem to have no answer. Your Plaintiff's rights are being violated without just cause.

## b). THE RETROACTIVE APPLICATION OF THE ACT IS IN VIOLATION OF YOUR PLAINTIFF'S RIGHT TO ESTABLISH INTIMATE RELATIONSHIPS.

Your Plaintiff would argue that, as applied to him, the Act would unconstitutionally forbid him from engaging and establishing intimate relationships. It is his contention that the above referenced, §§15-20-23 and 15-20-26, and is overly broad, thus allowing undue governmental infringement and intrusion upon his right to date and marry the woman of his choosing. In

23

addition, the Act will forbid him from begetting and rearing children of his own if he so chooses; all protected by the First and Fourteenth Amendments.

The substantive component of "the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition,' and implicit in the concept of ordered liberty,' such that neither liberty nor justice would exist if they were sacrificed."' *Washington v. Glucksberg*, 521 U.S. 702, 721, (1997) (internal citations omitted). As applied to Your Plaintiff the Act will make illegal for him to marry any woman that has children and would forbid him for begetting and rearing children if he so chooses.

The right to establish and sustain relationships for the purpose of marriage and the rearing of children is at the core of the intimate association right implicit in the First Amendment and is also protected by Alabama law (see §30-1-19, *Ala.Code* 1975). Your Plaintiff's contention is that if the State were allowed to place statutory restrictions upon whom he may or may not marry, and his right to beget and rear children, the government has then taken away his most sacred and basic rights protected under the First and Fourteenth Amendments. If Your

24

Plaintiff is forbidden from living in the home with a child (whether the child is his or of another) under the age 18, then he could never marry a woman who has a child nor could he choose to beget his own. This is not only an intrusion upon his Constitutional right to engage and maintain intimate relationships, but allows the government make the decision regarding birth control, abortions which infringe upon his religious freedoms.

As the applied to Your Plaintiff, the Act will make it a criminal offense for him to marrying any woman who has children under the age of eighteen. Moreover, the Act will make criminal for Your Plaintiff to beget and rear children with or without being married. See §§15-20-26(c)(4) and 15-20-23(b)(1)(2)(3), *supra*. All because an act of the legislature that, as interpreted by the Defendants, retroactively deems him guilty and unfit to exercise his right to intimate associations; marriage and the begetting of children.

It cannot be ignored that the *nolo contendere* plea flowed from an allegation made roughly a quarter century ago. At no time during the prior twenty-plus years have the Defendants nor any other agency of the State deemed him a sex offender requiring registration, including constitutional intrusions, restrictions

and public dissemination. Now, incarcerated on two-drug possession charges, the Defendants are attempting to foreclose on Your Plaintiff's right to engage in intimate relations with others. This, Your Plaintiff contends, is the exactly the type of government intrusion our Constitution protects us from. He begs for this Honorable Court's might and authority to protect his sacred rights.

## c). THE RETROACTIVE APPLICATION OF THE ACT IS IN VIOLATION OF YOUR PLAINTIFF'S RIGHT TO EXPRESSIVE AND INTIMATE ASSOCIATION TO PEACEFULLY ASSEMBLE.

Your Plaintiff would argue, as applied to him, the retroactive application of the Act is overly broad and violates his First and Fourteenth Amendment right to freedom of expressive and intimate associations to peacefully assemble. He argues that his association with his family and friends, will be curtailed, if not forbidden. Your Plaintiff would be restricted, if not forbidden from engaging in activities that have never before had legal boundaries. The Act will not only retroactively curtail once lawful acts, but it will also subject Your Plaintiff to felony prosecution (*ex post facto*).

Your Plaintiff contends that 15-20-26(f) is overly broad and makes criminal for him to peacefully assemble for the purpose of expressive and intimate associations.  Section 15-20-26(f) states:

> "No adult criminal sex offender, after having been convicted of a criminal sex offense involving a child, shall loiter on or within 500 feet of any property on which there is a school, child care facility, playground, park, athletic field or facility, or any other business or facility having a principal purpose of caring for, educating, or entertaining minors. Under this subsection, "loiter" means to enter or remain on property while having no legitimate purpose therefor or, if a legitimate purpose exists, remaining on that property beyond the time necessary to fulfill that purpose. An offender does not violate this subsection unless he or she has first been asked to leave a prohibited location by a person authorized to exclude the offender from the premises. An authorized person includes, _but is not limited to,_ any law enforcement officer, any owner or manager of the premises, a principal or teacher if the premises is a school or child care facility, or a coach if the premises is an athletic field or facility."

§15-20-26(f), _Ala.Code_ 1975 (emphasis added).

The foregoing allows _any person_ to demand Your Plaintiff to vacate a public place having  lawfully assembled for legitimate reasons with his family, friends and other associations he may have.  An enactment that criminalizes ordinary associational conduct not constituting a breach of the peace conflicts

27

with the First Amendment.  See _Coates v. City of Cincinnati_, 402 U.S. 611, 615 (1971).

The loitering statute before us would punish Your Plaintiff not for criminal acts, but rather for his act of being in a public place (_any property on which there is a school, child care facility, playground, park, athletic field or facility, or any other business or facility having a principal purpose of caring for, educating, or entertaining minors_).  A state violates the Fourteenth Amendment when it seeks to interfere with lawful social relationships.  The gathering of family, friends and associations is the type of association that must be protected by the First Amendment.  Your Plaintiff's right to engage in lawful activities in public parks, playgrounds, athletic fields or facilities with his family, friends and associates should be beyond the scope of governmental control.

The First Amendment guarantees the freedom of Your Plaintiff to associate both for the purely private purposes of forming and preserving personal and social relationships, and as a collective means of engaging in political expression, religious worship or other activities independently protected by the Constitution. _Roberts_, at 618-623 (1984).  It is his contention that he his right to assemble with

28

his family, friends and associations in or around public playgrounds, parks, athletic fields or facilities, or any other businesses or facilities, that *may* entertain minors will subject him to public scorn and criminal punishment.

Bearing in mind, the plea was entered more than fourteen years ago. Never before has Your Plaintiff been subjected to criminal prosecution for taking his children or grandchildren to the park, a football or baseball game nor anything of the like. Now, more than fourteen years later, the Defendants are not only forbidding Your Plaintiff from entertaining his family, but are retroactively subjecting him to criminal prosecution for performing acts that were never before criminal.   This is not only a violation of his First and Fourteenth Amendment rights, but is clearly an ex post facto law (making criminal an act done before the passing of the law and which was innocent when done).   Your Plaintiff begs the Honorable Court's intervention to protect his rights.

## CONCLUSION

Our Bill of Rights is contained in a written Constitution, one of whose purposes is to protect the rights of the people against infringement by the legislature. See *Florida v Meyers*, 466 US 380, 385 (1984) (Stevens, J., dissenting)

29

("we must not forget that a central purpose of our written Constitution, and more specifically of its unique creation of a life-tenured federal judiciary, was to ensure that certain rights are firmly secured against possible oppression by the Federal or State Governments"). More fundamentally, Alabama, in its eagerness to adopt a statute consistent with what it believes and states to be in the interest of public safety, overlooks the purpose of the Constitution and its Bill of Rights. That purpose, of course, is to ensure that certain principles will not be sacrificed to expediency; these are enshrined as principles of fundamental law beyond the reach of governmental officials or legislative majorities. The First and Fourteenth Amendments are a part of that fundamental law; it represents values that are so deeply rooted in our Nation's history that an infringement of this type (retroactive legislation and fair play) will eventually lead to more intrusions, thus, soon no man will be safe in his rights; it must be forever condemned as a matter of constitutional principle. If the Defendants are allowed to apply the Act upon Your Plaintiff, the purpose of our Constitution has been thwarted, thus, it becomes mere verbalisms.

This infringement and intrusion upon Your Plaintiff's First and Fourteenth Amendment rights is <u>not</u> because Your Plaintiff has demonstrated sexual deviate behavior, nor is it because he pleaded guilty to such a charge. The Defendants are treading upon sacred rights because of a plea of *nolo contendere* entered twenty-two years ago to an eight years warrant that he had no knowledge.[3]

Sex offender registration statutes have been in both Title 13A and Title 15 of the *Alabama Code* since as early as 1967. <u>See</u> §§13A-11-200, et. seq. and 15-20-1, et. seq. If the Defendants feel as though Your Plaintiff is some sort of danger to his community then why they waited roughly a fourteen years to classify and subject him to a sex offender registering statute? The question remains unanswered.

Respectfully submitted this 8th day of June, 2006.


Michael R. Bush, Plaintiff

---

[3] "The life line of the rule is that the record of such a conviction [based upon a plea of *nolo contendere]* is limited to the case and only the case in which the plea is entered; it is, in fact, not a conviction at all on a plea of guilty, but is an adjudication on a declaration by the accused in open court that, for reasons personal to himself (*and there could be many bona fide, honest ones*) he prefers not only to stand mute with respect to answering the charge, but also will not contest the prosecution's efforts with respect to it." State of Alabama ex rel. <u>WOODS v. THROWER</u>, 272 Ala 344; 131 So.2d 4201961 (Ala.1961) (emphasis added).

## AFFIRMATION UNDER PENALTY OF PERJURY

Pursuant to 28 U.S.C. §1746, I Michael R. Bush, declare and certify under the penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on this 8th day of June, 2006.

Michael R. Bush, Plaintiff

## CERTIFICATE OF SERVICE

I, Michael R. Bush, certify that I have served a true copy of the foregoing upon counsel for the Defendants on this 8th day of June, 2006, by placing the same in the hands of prison officials to be mailed via the United States Mail, postage prepaid and properly addressed as follows:

J. Matt Bledsoe
Office of the Attorney General
11 South Union Street
Montgomery, Alabama 36130-0152

Michael R. Bush #149363
L.C.F. 12 Dorm
28779 Nick Davis Road
Harvest, Alabama 35749-7009

*32*