IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MICHAEL R. BUSH, #149363,        )
                                 )
        Plaintiff,               )
                                 )
    v.                           )        CASE NO. 2:06-CV-292-MHT
                                 )                [WO]
                                 )
PAUL WHALEY, et al.,             )
                                 )
        Defendants.              )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a 42 U.S.C. § 1983 action in which Michael R. Bush ("Bush"), a state

inmate, asserts that the Alabama Community Notification Act, *Ala. Code* 1975 § 15-20-20

et seq. (1975, as amended), is unconstitutional as applied to him.[1]  Specifically, Bush

complains that application of the Community Notification Act violates his constitutional

rights to substantive and procedural due process and equal protection.  He further agues that

the Act imposes unconstitutional punishment under the Ex Post Facto and Bill of Attainder

Clauses.  This case is currently before the court on Bush's motion for preliminary

injunction in which he requests that the court prohibit enforcement of the Act's registration

and community notification provisions against him pending resolution of this lawsuit.  For

---

[1]1.  "Your plaintiff does not argue that the requirements of the sex offender notification and registration fails to serve a legitimate societal and penological concern.  He only adamantly argues that such requirements do not fit his particular situation . . ."  *Plaintiff's Complaint* at 22.  The evidentiary materials submitted in this case demonstrate that Bush is being subjected to the Act based on an adult judgment of guilt for attempted sexual battery/use of force imposed upon him by the Circuit Court of Escambia County, Florida on May 27, 1992.  *Plaintiff's Exhibit 1 to the May 10, 2006 Rebuttal* at 6-7 - *Judgment of Guilt* at 1-2.

the reasons set forth below, the motion is due to be denied.

# I.  BACKGROUND

"In response to the 1994 abduction, rape, and murder of a seven-year-old girl, Megan Kanka, by her neighbor, a convicted sex offender, Congress along with all 50 states enacted laws requiring sex offenders to register their residences with local law enforcement.  *See Smith v. Doe*, 538 U.S. 84, 89-90, 123 S.Ct. 1140, 1145, 155 L.Ed.2d 164 (2003). Concerned by Kanka's murder and the high number of repeat sex offenders, states enacted these laws (often referred to as Megan's Laws) to notify the public about local sex offenders and to aid law enforcement in identifying and locating potential suspects in local sex-related crimes.  *See Connecticut Department of Public Safety v. Doe*, 538 U.S. 1, 4, 123 S.Ct. 1160, 1163, 155 L.Ed.2d 98 (2003)."  *Doe v. Moore*, 410 F.3d 1337, 1340 (11th Cir. 2005).  The Community Notification Act is Alabama's version of such a law.

## A.  The Alabama Community Notification Act

The Alabama Community Notification Act became effective in 1996 but has since been amended on several occasions to address various constitutional challenges presented to the Act and to similar versions of Megan's Laws adopted by other states.[2]  The Alabama Act nevertheless remains one of the most far-reaching and restrictive sex offender registration laws in the United States, as it requires individuals convicted of various sex

_____

[2] 2.  In this Recommendation, the court addresses the Act in its current state, as the provisions contained therein are the provisions relevant to the claims pending before this court.

offenses, regardless of the date of their conviction(s), to register with law enforcement officials prior to their release into society,[3] and it mandates that those officials notify members of the public whenever a registered offender establishes a residence in their community.[4]  The Act also places significant restrictions on where and with whom a registrant may live and work.

### 1.  Applicability of Act

"A person convicted of a criminal sex offense [listed in the Community Notification Act], ***including a person who has pleaded nolo contendere to a criminal sex offense***, regardless of whether adjudication was withheld" is an adult criminal sex offender under Alabama law subject to the Act's registration, notification, residency and employment provisions.  *Ala. Code* § 15-20-21(1) (emphasis added).  The statute identifies "criminal sex offense" as any of the following offenses:  rape, sodomy, sexual torture, sexual abuse,

---

[3]3.  The Act defines release as "[r]elease from a state prison, county jail, or municipal jail, or release or discharge from the custody of the Department of Youth Services or other juvenile detention, or placement on an appeal bond, probation or parole or aftercare, or placement into any facility or treatment program that allows the offender to have unsupervised access to the public." *Ala. Code* § 15-20-21(10).

[4]4.  Alabama law likewise requires that "any person, except a delinquent child, . . . residing in Alabama, [who] has heretofore been convicted, or shall be convicted in any state or municipal court in Alabama, or federal court, or so convicted in another state in any court having jurisdiction similar to the jurisdiction of state and municipal courts in Alabama for [any act of sexual perversion involving a member of the same or the opposite sex, any sexual abuse of any member of the same or the opposite sex, rape, sodomy, sexual misconduct, indecent exposure, promoting prostitution, obscenity, incest or the attempt to commit such offenses], . . . shall, upon his or her release from legal custody, register with the sheriff of the county of his or her legal residence within seven days following such release . . . For purposes of this article, a conviction includes a plea of nolo contendere, regardless of whether adjudication was withheld. Any person having been so convicted shall upon moving his legal residence from one county to another register with the sheriff of the county to which he has moved within seven days after such removal." *Ala.Code* 1975 § 13A-11-200(b)-(c).  The Community Notification Act does not "preclude any criminal sex offender from registering in accordance with Section 13A-11-200" but directs that "such registration unless otherwise proscribed by this article does not trigger public notification." *Ala. Code* § 15-20-33(c).

enticing a child for immoral purposes, promoting prostitution, violation of the Alabama Child Pornography Act,[5] kidnapping of a minor (except by a parent), incest (when the offender is an adult and the victim is a minor), and soliciting a child by computer. *Ala. Code* § 15-20-21(4). "Any solicitation, attempt, or conspiracy to commit any of the [aforementioned] offenses" is likewise a "criminal sex offense" under the Act, *Ala. Code* § 15-20-21(4)*k.*, as is "[a]ny crime committed [in another] jurisdiction, which, if it had been committed in this state under the current provisions of law, would constitute an offense" defined in the Act as a criminal sex offense. *Ala. Code* § 15-20-21(4)*l.* In addition, the Act provides that "[t]he foregoing notwithstanding, any crime committed in any jurisdiction which, irrespective of the specific description or statutory elements thereof, is in any way characterized or known as rape, sodomy, sexual assault, sexual battery, sexual abuse, sexual torture, solicitation of a child, enticing or luring a child, child pornography, lewd and lascivious conduct, taking indecent liberties with a child, or molestation of a child" is considered a "criminal sex offense" for purposes of applying the Community Notification Act to an offender. *Ala. Code* § 15-20-21(4)m.

If a person is deemed to have committed a criminal sex offense under the concomitant jurisdiction provision set forth in § 15-20-21(4)*l.*, he is provided an

---

[5]5. The Alabama Child Pornography Act proscribes: (1) the dissemination or public display of child pornography, 1975 Ala.Code § 13A-12-191; the possession of, and possession with intent to disseminate, child pornography, *id.* § 13A-12-192; and (3) the production of child pornography, *id.* at § 13A-12-196 and § 13A-12-197. This Act defines a child as a person under the age of 17 years.

administrative hearing to challenge that determination. *Ala. Code* § 15-20-38(a). However, once the Alabama Department of Public Safety "set[s] forth a listing of offenses from other jurisdictions that are to be considered criminal sex offenses under Section 15-20-21(4)*l.* [as directed by the Act] . . . any individual convicted of any offense set forth in the listing shall immediately be subject to this article and shall not be entitled to an administrative hearing as [previously] provided . . ." *Ala. Code* § 15-20-38(b). Application of the Act is unlimited in duration to an adult criminal sex offender. *Ala. Code* § 15-20-33(a) ("Any adult criminal sex offender shall be subject to this article for life."). With respect to a juvenile criminal sex offender residing in this state, the offender is "subject to this article for a period of ten years from the last date of release. A juvenile criminal sex offender who is subsequently convicted as an adult criminal sex offender within the ten-year period shall be considered solely an adult criminal sex offender." *Ala. Code* § 15-20-33(b).

## 2. Residency and Employment Restrictions

The Act contains several restrictions on residency and employment for an adult criminal sex offender. These restrictions appear as follows:

> (a) Unless otherwise exempted by law, no adult criminal sex offender shall establish a residence or any other living accommodation or accept employment within 2,000 feet of the property on which any school or child care facility is located.
> (b) Unless otherwise exempted by law, no adult criminal sex offender shall establish a residence or any other living accommodation within 1,000 feet of the property on which any of his or her former victims, or the victims' immediate family members reside.
> (c) No adult criminal sex offender shall establish a residence or any other living accommodation where a minor resides. Notwithstanding the foregoing,

5

an adult criminal sex offender may reside with a minor if the adult criminal sex offender is the parent, grandparent, or stepparent of the minor, unless one of the following conditions applies:

(1) The adult criminal sex offender's parental rights have been or are in the process of being terminated as provided by law.

(2) The adult criminal sex offender has been convicted of any criminal sex offense in which any of the offender's minor children, grandchildren, or stepchildren were the victim.

(3) The adult criminal sex offender has been convicted of any criminal sex offense in which a minor was the victim and the minor resided or lived with the offender at the time of the offense.

(4) The adult criminal sex offender has ever been convicted of any criminal sex offense involving a child, regardless of whether the offender was related to or shared a residence with the child victim.

(d) No adult criminal sex offender shall be permitted to willfully or knowingly come within 100 feet of any of his or her former victims, except as elsewhere provided by law, or make any visual or audible sexually suggestive or obscene gesture, sound, or communication at or to a former victim or a member of the victim's immediate family.

(e) Changes to property within 2,000 feet of an adult criminal sex offender's registered address which occur after an adult criminal sex offender establishes residency or accepts employment shall not form the basis for finding that a criminal sex offender is in violation of subsections (a) or (b).

(f) No adult criminal sex offender, after having been convicted of a criminal sex offense involving a child, shall loiter on or within 500 feet of any property on which there is a school, child care facility, playground, park, athletic field or facility, or any other business or facility having a principal purpose of caring for, educating, or entertaining minors. Under this subsection, "loiter" means to enter or remain on property while having no legitimate purpose therefor or, if a legitimate purpose exists, remaining on that property beyond the time necessary to fulfill that purpose. An offender does not violate this subsection unless he or she has first been asked to leave a prohibited location by a person authorized to exclude the offender from the premises. An authorized person includes, but is not limited to, any law enforcement officer, any owner or manager of the premises, a principal or teacher if the premises is a school or child care facility, or a coach if the premises is an athletic field or facility.

(g) No adult criminal sex offender, after having been convicted of a criminal sex offense involving a child, shall accept, maintain, or carry on any employment or vocation at or within 500 feet of a school, child care facility,

playground, park, athletic field or facility, or any other business or facility having a principal purpose of caring for, educating, or entertaining minors. (h) An adult criminal sex offender who knowingly violates the provisions of this section shall be guilty of a Class C felony.

*Ala. Code* § 15-20-26(a)-(h).[6]  The Act likewise limits the circumstances under which a criminal sex offender may change his name.  *Ala. Code* § 15-20-36 ("No criminal sex offender shall be allowed to change his or her name unless the change is incident to a change in the marital status of the criminal sex offender or is necessary to effect the exercise of religion of the criminal sex offender.  Such a change must be reported to the sheriff of the county in which the criminal sex offender resides within 30 days of the effective date of the change.  If the criminal sex offender is subject to the notification provision of this article, the reporting of a name change under this section shall invoke notification.").

### 3.  Registration of Offenders

Forty-five days prior to release from custody, a criminal sex offender must "declare in writing or by [approved] electronic means . . . the actual address at which he or she will

---

[6]. The Act defines a child care facility as "[a] licensed daycare center, a licensed child care facility, or any other child care service that is [under applicable state law] exempt from licensing[,]" *Ala. Code* § 15-20-21(2), and a school as "[a] licensed or accredited public or private school, or church school, that offers instruction in grades K-12 . . . [excluding] private residences in which students are taught by parents or tutors."  *Ala. Code* § 15-20-21(13).  The term employment "[i]ncludes employment that is full-time or part-time for any period, whether financially compensated, volunteered, or for the purpose of government  or educational benefit."  *Ala. Code* § 15-20-21(6).

reside or live upon release and the name and physical address of his or her employer, if any. Any failure to provide timely and accurate declarations shall constitute a Class C felony. Any adult criminal sex offender in violation of this section shall be ineligible for release on probation or parole." *Ala.Code* § 15-20-22(a)(1). The Act requires that the responsible agency notify law enforcement officials of the registered sex offender's address. *Ala. Code* § 15-20-22(a)(2)-(3). "The notification shall include all information available to the responsible agency which would be necessary to identify and trace the adult criminal sex offender, including, but not limited to, the offender's declared places of residence and employment, each sex offense history or pre-sentence investigation of the sex offense, fingerprints, and a current photograph of the adult criminal sex offender." *Id*. Registration also applies to criminal sex offenders who are convicted after the effective date of the Act but who are not sentenced to a term of incarceration. *Ala. Code* § 15-20-22(b). If a sentencing court does not impose a sentence of incarceration for a criminal sex offense, the court itself must register the offender with law enforcement officials within 24 hours of release. *Id*. The Act requires a registered sex offender to verify his address shortly after release and then annually thereafter. *Ala. Code* §15-20-24(a). Within 10 days of receipt of a verification form sent by the Alabama Department of Public Safety, an offender "shall present in person the completed verification form" to appropriate local law enforcement officials "who shall obtain fingerprints and a photograph . . ." *Ala. Code* § 15-20-24(b). All persons subject to the Act are required to notify law enforcement officials of their intent

to transfer legal residence or place of employment at least 30 days prior to any change in such status. *Ala. Code* § 15-20-23 and § 15-20-23.1. Any violation of these registration requirements is a Class C felony.

### 4. Community Notification

The Community Notification Act provides for mandatory community notification upon release of a criminal sex offender and upon receipt by law enforcement officials of the required notice that an offender intends to change his or her legal residence. *Ala. Code* § 15-20-25(a). The comprehensiveness of the required notice varies by location. In Birmingham, Huntsville, Mobile and Montgomery, notice of the sex offender's residence must go out to all residences "within 1,000 feet of the declared residence of the adult criminal sex offender" and to all schools and childcare facilities within three miles of such residence. *Ala. Code* § 15-20-25(a)(1). "In all other cities in Alabama with a resident population of 5,000 or more, [the designated law enforcement official] shall notify all persons who have a legal residence within 1,500 feet of the declared residence of the adult criminal sex offender and all schools and childcare facilities within three miles of the [offender's] declared residence . . . that the adult criminal sex offender will be establishing his or her residence." *Ala. Code* § 15-20-25(a)(2). In all other areas of the state, "the sheriff of the county in which the adult criminal sex offender intends to reside shall notify all persons who have a legal residence within 2,000 feet of the declared residence of the adult criminal sex offender, and all schools and child care facilities within three miles of

the declared residence of the adult criminal sex offender, that the adult criminal sex offender will be establishing his or her residence." *Ala. Code* § 15-20-25(a)(3).

Notification occurs by distribution of a "community notification flyer" via "regular mail or hand delivered to all [requisite] legal residences. . . .  In addition, any other method reasonably expected to provide notification may be utilized, including, but not limited to, posting a copy of the notice in a prominent place at the office of the sheriff and at the police station closest to the declared residence of the released criminal sex offender, publicizing the notice in a local newspaper, or posting electronically, including the Internet, or other means available." *Ala. Code* § 15-20-25(b).  The community notification flyer "shall include the following information on the criminal sex offender:  Name; actual living address; sex; date of birth; complete physical description, including distinguishing features such as scars, birth marks, or any identifying physical characteristics; and a current photograph.  This notification shall also include a statement of the criminal sex offense for which he or she has been convicted, including the age and gender of the victim, the geographic area where the offense occurred, and the date upon which the criminal sex offender will be released.  This notification shall also include a statement that the same information is on file [with law enforcement officials], and that the information will be available to the general public for inspection and identification purposes during regular business hours." *Ala. Code* § 15-20-21(3).

### 5.  Legislative Intent

In an amendment to the Community Notification Act effective October 1, 2005, the

Alabama legislature expressed its intent in passing the Act. *Ala. Code* § 15-20-20.1. The

relevant portion of this section reads as follows:

> The Legislature finds that the danger of recidivism posed by criminal sex offenders and that the protection of the public from these offenders is a paramount concern or interest to government. The Legislature further finds that law enforcement agencies' efforts to protect their communities, conduct investigations, and quickly apprehend criminal sex offenders are impaired by the lack of information about criminal sex offenders who live within their jurisdiction and that the lack of information shared with the public may result in the failure of the criminal justice system to identify, investigate, apprehend, and prosecute criminal sex offenders.
>
> The system of registering criminal sex offenders is a proper exercise of the state's police power regulating present and ongoing conduct. Comprehensive registration and periodic address verification will provide law enforcement with additional information critical to preventing sexual victimization and to resolving incidents involving sexual abuse and exploitation promptly. It will allow them to alert the public when necessary for the continued protection of the community.
>
> Persons found to have committed a sex offense have a reduced expectation of privacy because of the public's interest in safety and in the effective operation of government. In balancing offender's due process and other rights, and the interests of public security, the Legislature finds that releasing information about criminal sex offenders to law enforcement agencies and, providing access to or releasing such information about criminal sex offenders to the general public, will further the primary government interest of protecting vulnerable populations and in some instances the public, from potential harm. The Legislature further finds that residency and employment restrictions for criminal sex offenders provide additional protections to vulnerable segments of the public such as schools and child care facilities.
>
> * * *
>
> Therefore, the state policy is to assist local law enforcement agencies' efforts to protect their communities by requiring criminal sex offenders to register, record their address of residence, to be photographed, fingerprinted, to

11

authorize the release of necessary and relevant information about criminal sex offenders to the public, to mandate residency and employment restrictions upon criminal sex offenders, and to provide certain discretion to judges for application of these requirements as provided in this article.

The Legislature declares that its intent in imposing certain reporting and monitoring requirements on criminal sex offenders and requiring community notification of the residence and workplace of criminal sex offenders is to protect the public, especially children, from convicted criminal sex offenders.

### B.  The Plaintiff

On May 27, 1992, plaintiff Bush entered a plea of *nolo contendere* to the offense of attempted sexual battery/use of force before the Circuit Court of Escambia County, Florida. *Plaintiff's Exhibit 1 to the May 10, 2006 Rebuttal* at 6-7 - *Judgment of Guilt* at 1-2.  Upon receipt of this plea, the court adjudged Bush guilty of attempted sexual battery/use of force. *Id.* The court sentenced Bush to "ten (10) years [imprisonment] which was suspended" and placed him "on [supervised] probation for a period of eight (8) years . . ." *Id.*  Based on this judgment of conviction, Bush is listed as an adult sex offender on the State of Florida's web site for sexual offenders and predators.  *Defendant Coppage's June 5, 2006 Response to Motion for Preliminary Injunction* at 5; *see* http://www3.fdle.state.fl.us/sopu.

On April 26, 2006, the Alabama Board of Pardons and Paroles granted Bush parole. In light of this action by the parole board, correctional officials at the Limestone Correctional Facility on May 24, 2006 advised Bush that, based on his 1992 conviction for attempted sexual battery/use of force, he would be subject to the Alabama Community Notification Act upon his release from prison.  They further advised him of the requirement that he provide verification of his address, fingerprints and other information in accordance

with the provisions the Act.  Additionally, during this process, the officer in charge informed Bush of the repercussions of any failure to comply with the requests for information, specifically, that a warrant would issue against him for failing to register, a Class C felony, and his parole would be revoked.  *See Ala. Code* § 15-20-22(a)(1) ("Any failure to provide timely and accurate declarations [to the agency responsible for collecting such information] shall constitute a Class C felony.  Any adult criminal sex offender in violation of this section shall be ineligible for release on probation or parole.").  Bush provided the requested information and submitted to fingerprinting.

## II.  DISCUSSION

The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court . . ."  *Palmer v. Braun,* 287 F.3d 1325, 1329 (11th Cir. 2002). The four prerequisites which Bush must demonstrate to warrant issuance of a preliminary injunction are:  (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury without the injunction; (3) that the harm to Bush outweighs the harm to the non-moving parties; and (4) that an injunction would be in the interest of the public. *Palmer,* 287 F.3d at 1329; *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988); *Cate v. Oldham*, 707 F.2d 1176 (11th Cir. 1983); *Shatel Corp. v. Mao Ta Lumber and Yacht Corp.*, 697 F.2d 1352 (11th Cir. 1983).  "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion" as to each of the four prerequisites.  *See McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306 (11th Cir. 1998) (internal citations and quotations omitted);

*see also Texas v. Seatrain Int'l, S.A.,* 518 F.2d 175, 179 (5th Cir. 1975) (grant of preliminary injunction "is the exception rather than the rule," and movant must clearly carry the burden of persuasion). The moving party's failure to demonstrate a "substantial likelihood of success on the merits" will defeat the party's claim, regardless of the party's ability to establish any of the other elements. *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994); *see also Siegel v. Lepore,* 234 F.3d 1163, 1176 (11th Cir. 2000) (noting that "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper").

### A. Likelihood of Success on the Merits

Bush challenges application of the Community Notification Act to him on the following grounds: (1) violation of procedural due process, (2) violation of substantive due process, (3) violation of the Equal Protection Clause, and (4) violation of the Ex Post Facto and Bill of Attainder Clauses.

### 1. Procedural and Substantive Due Process

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state "shall deprive any person of life, liberty, or property without due process of law." To succeed on his procedural due process claim, Bush must establish that (1) the Community Notification Act deprives him of a protected liberty interest, and (2) the procedures accompanying the deprivation are constitutionally inadequate. *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908 (1989). Under the facts of this case, the court finds that Bush has failed

to demonstrate a likelihood of success on the merits of his claim that the Act deprives him of a protected liberty or property interest in violation of his due process rights.

Bush asserts that he received no advance notice or opportunity for a hearing with respect to the determination that his 1992 Florida offense qualified as a criminal sex offense requiring that he register as a sex offender under the Community Notification Act.[7] Bush further maintains that the judgment of guilt entered on his plea of *nolo contendere* is not a conviction for a criminal sex offense within the meaning of the Community Notification Act which "is a prerequisite to the application of the Act" and its "registration and community notification provisions . . ." *Plaintiff's Complaint* at 11.[8]  Bush therefore argues that application of the Community Notification Act based on this offense will deprive him of his constitutional right to privacy in that public dissemination of his personal information will damage his reputation, prevent him from establishing a residence of his choice and adversely impact his ability to secure employment.

Bush's assertion that his plea of *nolo contendere* is not a criminal conviction subject to the Community Notification Act is without merit, as the Act by its specific and express terms applies to "[a] person convicted of a criminal sex offense, including a person who has pleaded nolo contendere to a criminal sex offense . . ." *Ala. Code* § 15-20-21(1).  The Act further defines a criminal sex offense as "any crime committed in any jurisdiction which, irrespective of the specific description or statutory elements thereof, is in any way

---

[7] 7.  The court construes this allegation as a procedural due process claim.

[8] 8.  The court construes this claim as one alleging a denial of substantive due process.

characterized or known as . . . sexual battery . . ."  *Ala. Code* § 15-20-21(4)m.  The Alabama legislature has therefore decided that all convicted sex offenders, including those adjudged guilty on the basis of a *nolo contendere* plea in another jurisdiction for any offense involving sexual battery, are subject to registration under the Community Notification Act.  Consequently, procedural due process requirements with respect to such offenses are met through the original proceedings that resulted in the conviction. *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1, 7, 123 S.Ct. 1160, 1164 (2003).

Moreover, substantive due process does not appear to be implicated, as Bush has failed to demonstrate the existence of a legitimate privacy interest in preventing compilation and dissemination of accurate information that is already, albeit less conveniently, available in the public domain.  In reaching this conclusion, the court relies on the reasoning of the decision issued by the United States Supreme Court in *Smith v. Doe,* 538 U.S. 84, 123 S.Ct. 1140 (2003).  As the Third Circuit has noted, "[a]lthough the issue presented in *Smith* was whether Alaska's internet registry constituted an impermissible ex post facto statute and the registrants did not raise any privacy claims, the Supreme Court's views as to disclosure of Megan's Law information via the internet were made abundantly clear in *Smith*.  In rejecting the registrants' argument that posting their information on the internet constituted punishment, the Court stated: 'The purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender.  Widespread public access is necessary for the efficacy of the scheme, and the

attendant humiliation is but a collateral consequence of a valid regulation.'" *A.A. ex rel. M.M. v. New Jersey*, 341 F.3d 206, 213 (3rd Cir. 2003) (citing *Smith*, 538 U.S. at [99], 123 S.Ct. at 1150). The *Smith* Court likewise determined that any negative consequences resulting from application of the registration and notification provisions at issue arose from the actions of the registrants themselves. "Although the public availability of the information [provided under the provisions of the Alaska Act] may have a lasting and painful impact on the convicted sex offender, these consequences flow not from the Act's registration and dissemination provisions, but from the fact of conviction, already a matter of public record. The State [merely] makes the facts underlying the offenses and the resulting convictions accessible so members of the public can take the precautions they deem necessary before dealing with the registrant." *Smith*, 538 U.S. at 101, 123 S.Ct. at 1151. The Court further noted that the nature of the process mitigated against the offenders' constitutional concerns. "An individual seeking the information must take the initial step of going to the Department of Public Safety's Web site, proceed to the sex offender registry, and then look up the desired information. The process is more analogous to a visit to an official archive of criminal records than it is to a scheme forcing an offender to appear in public with some visible badge of past criminality. The Internet makes the document search more efficient, cost effective, and convenient for [the State's] citizenry." *Smith*, 538 U.S. at 99, 123 S.Ct. at 1151.

In light of the foregoing, the court concludes that there is a not a reasonable likelihood that Bush will succeed on the merits of his substantive due process claim.

### 2. Equal Protection

Bush complains that application of the Community Notification Act to him violates his equal protection rights because the State does not consider a *nolo contendere* plea as a conviction for purposes other than the Act.  In order to allege a claim cognizable under the Equal Protection Clause, a plaintiff must, at the very least, state that he is similarly situated with other persons who were treated differently and that the reason for the differential treatment was based on race, religion, national origin, poverty or some other constitutionally protected interest.  *Jones v. Ray*, 279 F.3d 944, 947 (11th Cir. 2001); *Damiano v. Florida Parole and Probation Commission*, 785 F.2d 929, 932-33 (11th Cir. 1986).  Bush has failed to identify any similarly situated inmate who has been treated differently under the Act.  Accordingly, he has not established that he is likely to succeed on the merits of his equal protection claim.

### 3. Ex Post Facto and Bill of Attainder Challenges

Bush contends that the Community Notification Act imposes unconstitutional punishment under the Ex Post Facto and Bill of Attainder Clauses.  The Ex Post Facto Clause directs that the government may not apply a law retroactively that "inflicts a greater punishment, than the law annexed to the crime, when committed."  *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798).  Under the Bill of Attainder Clause, legislatures are forbidden to engage in "[l]egislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial."  *United States v. Brown*, 381 U.S. 437, 448-

18

49, 85 S.Ct. 1707, 1715 (1965). Imposition of punishment upon Bush under the Act is an essential element of both the ex post facto and bill of attainder challenges in this case. Differences among the Ex Post Facto and Bill of Attainder Clauses with respect to the elements of punishment, if any, are not relevant here, and the court will therefore subject these challenges to the same analysis. In so doing, the court finds the opinion issued in *Smith v. Doe*, *supra*, dispositive of Bush's ex post facto and bill of attainder claims.

In *Smith*, the Court addressed an ex post facto challenge to the Alaska Sex Offender Registration Act, an Act strikingly similar to the Alabama Community Notification Act in its registration and notification requirements, brought by individuals convicted on *nolo contendere* pleas prior to passage of the Alaska Act.[9] Specifically, the Court "considered

---

[9] 9. "The Alaska law . . . contains two components: a registration requirement and a notification system. Both are retroactive. . . . The Act requires any 'sex offender or child kidnapper who is physically present in the state' to register, either with the Department of Corrections (if the individual is incarcerated) or with the local law enforcement authorities (if the individual is at liberty). . . . Prompt registration is mandated. If still in prison, a covered sex offender must register within 30 days before release; otherwise he must do so within a working day of his conviction or of entering the State. . . . The sex offender must provide his name, aliases, identifying features, address, place of employment, date of birth, conviction information, driver's license number, information about vehicles to which he has access, and postconviction treatment history. . . . He must permit the authorities to photograph and fingerprint him.

If the offender was convicted of a single, nonaggravated sex crime, he must provide annual verification of the submitted information for 15 years. . . . If he was convicted of an aggravated sex offense or of two or more sex offenses, he must register for life and verify the information quarterly. . . . The offender must notify his local police department if he moves. . . . A sex offender who knowingly fails to comply with the Act is subject to criminal prosecution.

The information is forwarded to the Alaska Department of Public Safety, which maintains a central registry of sex offenders. . . . Some of the data, such as fingerprints, driver's license number, anticipated change of address, and whether the offender has had medical treatment afterwards, are kept confidential. . . . The following information is made available to the public: 'the sex offender's or child kidnapper's name, aliases, address, photograph, physical description, description[,] license [and] identification numbers of motor vehicles, place of employment, date of birth, crime for which convicted, date of conviction, place and court of conviction, length and conditions of sentence, and a statement as to whether the offender or kidnapper is in compliance with [the update] requirements . . . or cannot be located.' . . . The Act does not specify the means by which the registry information must be made public. Alaska has chosen to make most of the nonconfidential information available on the Internet." 538 U.S. at 90-91, 123 S.Ct. at 1145-1146 (citations to statute omitted).

a claim that a sex offender registration and notification law constitutes retroactive punishment forbidden by the Ex Post Facto Clause." *Smith*, 538 U. S. at 92, 123 S.Ct. at 1147. The Court determined that "[t]he [Alaska] Act is nonpunitive, and its retroactive application does not violate the Ex Post Facto Clause." Id., 538 U.S. at 105-106, 123 S.Ct. at 1154. The relevant portion of this opinion reads as follows:

> We must "ascertain whether the legislature meant the statute to establish 'civil' proceedings." *Kansas v. Hendricks,* 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is " 'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.' " *Ibid.* (quoting *United States v. Ward,* 448 U.S. 242, 248-249, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)). Because we "ordinarily defer to the legislature's stated intent," *Hendricks, supra,* at 361, 117 S.Ct. 2072," 'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty," *Hudson v. United States,* 522 U.S. 93, 100, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (quoting *Ward, supra,* at 249, 100 S.Ct. 2636); see also *Hendricks, supra,* at 361, 117 S.Ct. 2072; *United States v. Ursery,* 518 U.S. 267, 290, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996); *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 365, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984).
>
> Whether a statutory scheme is civil or criminal "is first of all a question of statutory construction." *Hendricks, supra,* at 361, 117 S.Ct. 2072 (internal quotation marks omitted); see also *Hudson, supra,* at 99, 118 S.Ct. 488. We consider the statute's text and its structure to determine the legislative objective. *Flemming v. Nestor,* 363 U.S. 603, 617, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). A conclusion that the legislature intended to punish would satisfy an *ex post facto* challenge without further inquiry into its effects, so considerable deference must be accorded to the intent as the legislature has stated it.
>
> The courts "must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." *Hudson, supra,* at 99, 118 S.Ct. 488 (internal

quotation marks omitted). Here, the Alaska Legislature expressed the objective of the law in the statutory text itself. The legislature found that "sex offenders pose a high risk of reoffending," and identified "protecting the public from sex offenders" as the "primary governmental interest" of the law. 1994 Alaska Sess. Laws ch. 41, § 1. The legislature further determined that "release of certain information about sex offenders to public agencies and the general public will assist in protecting the public safety." *Ibid.* As we observed in *Hendricks,* where we examined an *ex post facto* challenge to a postincarceration confinement of sex offenders, an imposition of restrictive measures on sex offenders adjudged to be dangerous is "a legitimate nonpunitive governmental objective and has been historically so regarded." 521 U.S., at 363, 117 S.Ct. 2072. In this case, as in *Hendricks,* "[n]othing on the face of the statute suggests that the legislature sought to create anything other than a civil ··· scheme designed to protect the public from harm." *Id.,* at 361, 117 S.Ct. 2072.

Other formal attributes of a legislative enactment, such as the manner of its codification or the enforcement procedures it establishes, are probative of the legislature's intent. See *Hendricks, supra,* at 361, 117 S.Ct. 2072; *Hudson, supra,* at 103, 118 S.Ct. 488; *89 Firearms, supra,* at 363, 104 S.Ct. 1099. In this case these factors are open to debate. The notification provisions of the Act are codified in the State's "Health, Safety, and Housing Code," § 18, confirming our conclusion that the statute was intended as a nonpunitive regulatory measure. Cf. *Hendricks, supra,* at 361, 117 S.Ct. 2072 (the State's "objective to create a civil proceeding is evidenced by its placement of the Act within the [State's] probate code, instead of the criminal code" (citations omitted)). The Act's registration provisions, however, are codified in the State's criminal procedure code, and so might seem to point in the opposite direction. These factors, though, are not dispositive. The location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one. In *89 Firearms,* the Court held a forfeiture provision to be a civil sanction even though the authorizing statute was in the criminal code. 465 U.S., at 364-365, 104 S.Ct. 1099. The Court rejected the argument that the placement demonstrated Congress' "intention to create an additional criminal sanction," observing that "both criminal and civil sanctions may be labeled 'penalties.' " *Id.,* at 364, n. 6, 104 S.Ct. 1099.
* * *

In analyzing the effects of the Act we refer to the seven factors noted in *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 168-169, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), as a useful framework. These factors, which migrated into our *ex post facto* case law from double jeopardy jurisprudence, have their earlier origins in cases under the Sixth and Eighth Amendments, as well

as the Bill of Attainder and the *Ex Post Facto* Clauses. See *id.,* at 168-169, and nn. 22-28, 83 S.Ct. 554. Because the *Mendoza-Martinez* factors are designed to apply in various constitutional contexts, we have said they are "neither exhaustive nor dispositive," *United States v. Ward,* 448 U.S., at 249, 100 S.Ct. 2636; *89 Firearms,* 465 U.S., at 365, n. 7, 104 S.Ct. 1099, but are "useful guideposts," *Hudson,* 522 U.S., at 99, 118 S.Ct. 488. The factors most relevant to our analysis are whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose.

By contrast [to early colonial punishments], the stigma of Alaska's Megan's Law results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public. Our system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment. On the contrary, our criminal law tradition insists on public indictment, public trial, and public imposition of sentence. Transparency is essential to maintaining public respect for the criminal justice system, ensuring its integrity, and protecting the rights of the accused. The publicity may cause adverse consequences for the convicted defendant, running from mild personal embarrassment to social ostracism. In contrast to the colonial shaming punishments, however, the State does not make the publicity and the resulting stigma an integral part of the objective of the regulatory scheme.

The fact that Alaska posts the information on the Internet does not alter our conclusion. It must be acknowledged that notice of a criminal conviction subjects the offender to public shame, the humiliation increasing in proportion to the extent of the publicity. And the geographic reach of the Internet is greater than anything which could have been designed in colonial times. These facts do not render Internet notification punitive. The purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender. Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation.

The State's Web site does not provide the public with means to shame the offender by, say, posting comments underneath his record. An individual seeking the information must take the initial step of going to the Department of Public Safety's Web site, proceed to the sex offender registry, and then look up the desired information. The process is more analogous to a visit to an official archive of criminal records than it is to a scheme forcing an offender to appear in public with some visible badge of past criminality. The Internet makes the document search more efficient, cost effective, and

convenient for Alaska's citizenry.

We next consider whether the Act subjects respondents to an "affirmative disability or restraint." *Mendoza-Martinez, supra,* at 168, 83 S.Ct. 554. Here, we inquire how the effects of the Act are felt by those subject to it. If the disability or restraint is minor and indirect, its effects are unlikely to be punitive.

The Act imposes no physical restraint, and so does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint. *Hudson,* 522 U.S., at 104, 118 S.Ct. 488. The Act's obligations are less harsh than the sanctions of occupational debarment, which we have held to be nonpunitive. See *ibid.* (forbidding further participation in the banking industry); *De Veau v. Braisted,* 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960) (forbidding work as a union official); *Hawker v. New York,* 170 U.S. 189, 18 S.Ct. 573, 42 L.Ed. 1002 (1898) (revocation of a medical license). The Act does not restrain activities sex offenders may pursue but leaves them free to change jobs or residences.

The Court of Appeals sought to distinguish *Hawker* and cases which have followed it on the grounds that the disability at issue there was specific and "narrow," confined to particular professions, whereas "the procedures employed under the Alaska statute are likely to make [respondents] *completely unemployable* " because "employers will not want to risk loss of business when the public learns that they have hired sex offenders." 259 F.3d, at 988. This is conjecture. Landlords and employers could conduct background checks on the criminal records of prospective employees or tenants even with the Act not in force. The record in this case contains no evidence that the Act has led to substantial occupational or housing disadvantages for former sex offenders that would not have otherwise occurred through the use of routine background checks by employers and landlords. The Court of Appeals identified only one incident from the 7-year history of Alaska's law where a sex offender suffered community hostility and damage to his business after the information he submitted to the registry became public. *Id.,* at 987-988. This could have occurred in any event, because the information about the individual's conviction was already in the public domain.

Although the public availability of the information may have a lasting and painful impact on the convicted sex offender, these consequences flow not from the Act's registration and dissemination provisions, but from the fact of conviction, already a matter of public record. The State makes the facts underlying the offenses and the resulting convictions accessible so members of the public can take the precautions they deem necessary before dealing with the registrant.

The Court of Appeals held that the registration system is parallel to

23

probation or supervised release in terms of the restraint imposed. 259 F.3d, at 987. This argument has some force, but, after due consideration, we reject it. Probation and supervised release entail a series of mandatory conditions and allow the supervising officer to seek the revocation of probation or release in case of infraction. See generally *Johnson v. United States,* 529 U.S. 694, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000); *Griffin v. Wisconsin,* 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). By contrast, offenders subject to the Alaska statute are free to move where they wish and to live and work as other citizens, with no supervision. Although registrants must inform the authorities after they change their facial features (such as growing a beard), borrow a car, or seek psychiatric treatment, they are not required to seek permission to do so. A sex offender who fails to comply with the reporting requirement may be subjected to a criminal prosecution for that failure, but any prosecution is a proceeding separate from the individual's original offense. Whether other constitutional objections can be raised to a mandatory reporting requirement, and how those questions might be resolved, are concerns beyond the scope of this opinion. It suffices to say the registration requirements make a valid regulatory program effective and do not impose punitive restraints in violation of the *Ex Post Facto* Clause.

The State concedes that the statute might deter future crimes. Respondents seize on this proposition to argue that the law is punitive, because deterrence is one purpose of punishment. Brief for Respondents 37. This proves too much. Any number of governmental programs might deter crime without imposing punishment. "To hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' ⋯ would severely undermine the Government's ability to engage in effective regulation." *Hudson, supra,* at 105, 118 S.Ct. 488; see also *Ursery,* 518 U.S., at 292, 116 S.Ct. 2135; *89 Firearms,* 465 U.S., at 364, 104 S.Ct. 1099.

The Court of Appeals was incorrect to conclude that the Act's registration obligations were retributive because "the length of the reporting requirement appears to be measured by the extent of the wrongdoing, not by the extent of the risk posed." 259 F.3d, at 990. The Act, it is true, differentiates between individuals convicted of aggravated or multiple offenses and those convicted of a single nonaggravated offense. Alaska Stat. § 12.63.020(a)(1) (2000). The broad categories, however, and the corresponding length of the reporting requirement, are reasonably related to the danger of recidivism, and this is consistent with the regulatory objective.

The Act's rational connection to a nonpunitive purpose is a "[m]ost significant" factor in our determination that the statute's effects are not punitive. *Ursery, supra,* at 290, 116 S.Ct. 2135. As the Court of Appeals acknowledged, the Act has a legitimate nonpunitive purpose of "public safety, which is advanced by alerting the public to the risk of sex offenders

in their communit[y]." 259 F.3d, at 991. Respondents concede, in turn, that "this alternative purpose is valid, and rational." Brief for Respondents 38. They contend, however, that the Act lacks the necessary regulatory connection because it is not "narrowly drawn to accomplish the stated purpose." *Ibid.* A statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance. The imprecision respondents rely upon does not suggest that the Act's nonpunitive purpose is a "sham or mere pretext." *Hendricks,* 521 U.S., at 371, 117 S.Ct. 2072 (KENNEDY, J., concurring).

In concluding the Act was excessive in relation to its regulatory purpose, the Court of Appeals relied in large part on two propositions: first, that the statute applies to all convicted sex offenders without regard to their future dangerousness; and, second, that it places no limits on the number of persons who have access to the information. 259 F.3d, at 991-992. Neither argument is persuasive.

Alaska could conclude that a conviction for a sex offense provides evidence of substantial risk of recidivism. The legislature's findings are consistent with grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class. The risk of recidivism posed by sex offenders is "frightening and high." *McKune v. Lile,* 536 U.S. 24, 34, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002); see also *id.,* at 33, 122 S.Ct. 2017 ("When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault" (citing U.S. Dept. of Justice, Bureau of Justice Statistics, Sex Offenses and Offenders 27 (1997); U.S. Dept. of Justice, Bureau of Justice Statistics, Recidivism of Prisoners Released in 1983, p. 6 (1997))).

The *Ex Post Facto* Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences. We have upheld against *ex post facto* challenges laws imposing regulatory burdens on individuals convicted of crimes without any corresponding risk assessment. See *De Veau,* 363 U.S., at 160, 80 S.Ct. 1146; *Hawker,* 170 U.S., at 197, 18 S.Ct. 573. As stated in *Hawker:* "Doubtless, one who has violated the criminal law may thereafter reform and become in fact possessed of a good moral character. But the legislature has power in cases of this kind to make a rule of universal application····" *Ibid.* The State's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment under the *Ex Post Facto* Clause.

Our decision in *Hendricks,* on which respondents rely, Brief for Respondents 39, is not to the contrary. The State's objective in *Hendricks* was

involuntary (and potentially indefinite) confinement of "particularly dangerous individuals." 521 U.S., at 357-358, 364, 117 S.Ct. 2072. The magnitude of the restraint made individual assessment appropriate. The Act, by contrast, imposes the more minor condition of registration. In the context of the regulatory scheme the State can dispense with individual predictions of future dangerousness and allow the public to assess the risk on the basis of accurate, nonprivate information about the registrants' convictions without violating the prohibitions of the *Ex Post Facto* Clause.

The duration of the reporting requirements is not excessive. Empirical research on child molesters, for instance, has shown that, "[c]ontrary to conventional wisdom, most reoffenses do not occur within the first several years after release," but may occur "as late as 20 years following release." National Institute of Justice, R. Prentky, R. Knight, & A. Lee, U.S. Dept. of Justice, Child Sexual Molestation: Research Issues 14 (1997).

The Court of Appeals' reliance on the wide dissemination of the information is also unavailing. The Ninth Circuit  highlighted that the information was available "world-wide" and "[b]roadcas[t]" in an indiscriminate manner. 259 F.3d, at 992. As we have explained, however, the notification system is a passive one: An individual must seek access to the information. The Web site warns that the use of displayed information "to commit a criminal act against another person is subject to criminal prosecution." http:// www.dps.state.ak.us/nSorcr/asp/ (as visited Jan. 17, 2003) (available in the Clerk of Court's case file). Given the general mobility of our population, for Alaska to make its registry system available and easily accessible throughout the State was not so excessive a regulatory requirement as to become a punishment. See D. Schram & C. Milloy, Community Notification: A Study of Offender Characteristics and Recidivism 13 (1995) (38% of recidivist sex offenses in the State of Washington took place in jurisdictions other than where the previous offense was committed).

The excessiveness inquiry of our *ex post facto* jurisprudence is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy. The question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective. The Act meets this standard.

The two remaining *Mendoza-Martinez* factors-whether the regulation comes into play only on a finding of scienter and whether the behavior to which it applies is already a crime-are of little weight in this case. The regulatory scheme applies only to past conduct, which was, and is, a crime. This is a necessary beginning point, for recidivism is the statutory concern. The obligations the statute imposes are the responsibility of registration, a duty not predicated upon some present or repeated violation.

Our examination of the Act's effects leads to the determination that

26

respondents cannot show, much less by the clearest proof, that the effects of the law negate Alaska's intention to establish a civil regulatory scheme. The Act is nonpunitive, and its retroactive application does not violate the *Ex Post Facto* Clause.

*Smith*, 538 U.S. at 92-106, 123 S.Ct. 1146-1154.

Based on the Supreme Court's determination of the issue presented in *Smith*, this court concludes that Bush cannot establish that he is likely to succeed on the merits of his ex post facto and bill of attainder claims.

### III. CONCLUSION

Bush fails to establish a substantial likelihood of success on the merits of any of his claims for relief. The pleadings before the court therefore fail to demonstrate that Bush meets each of the prerequisites necessary for issuance of a preliminary injunction. Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motion for preliminary injunction filed by the plaintiff be DENIED.

2. This case be referred back the undersigned for additional proceedings.

It is further

ORDERED that on or before June 26, 2006 the parties may file objections to the Recommendation. Any objection must specifically identify the findings in the Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings in the Recommendation

shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, en banc), adopting as binding precedent all decisions of the former Fifth Circuit issued prior to September 30, 1981.

DONE, this 13th day of June, 2006.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE