IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL R. BUSH, #149363 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | CASE NO.: 2:06-CV-292-MHT |
| | ) | |
| PAUL WHALEY, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## JOINT SPECIAL REPORT

COME NOW, the Defendants, **Paul Whaley, Richard Allen, Colonel Mike Coppage and Troy King,** and in accordance with this Honorable Court's Order of December 20, 2005, do hereby submit the following Special Report.

## PARTIES

1. The Plaintiff, Michael Bush, AIS# 149363, ("Mr. Bush") is an Alabama Department of Corrections ("ADOC") inmate, who is presently incarcerated at Limestone Correctional Facility ("Limestone") in Harvest, Alabama.

2. Mr. Bush has named the following Defendants:

   a. Paul Whaley ("Director Whaley"), Director, Classification Division of the ADOC.

   b. Richard Allen ("Commissioner Allen"), Commissioner of the ADOC.

    c. Troy King ("Attorney General King"), Attorney General of the State of Alabama.

    d. Colonel Mike Coppage ("Colonel Coppage"), Director of the Alabama Department of Public Safety ("ADPS").

<u>**PLAINTIFF'S ALLEGATIONS AND DEMANDS**</u>

Mr. Bush seeks declaratory relief, a temporary restraining order and damages. Mr. Bush alleges in his complaint that Defendants have violated his constitutional rights. Specifically, Mr. Bush alleges:

1. Ala. Code § 15-20-20, et seq. (1975), otherwise known as "The Community Notification Act" ("the Act"), violates Mr. Bush's due process rights because application of the Act would deprive Mr. Bush of life, liberty, property, and reputation.

2. The Act violates Mr. Bush's right to Equal Protection under the law.

3. The Act violates the "*Ex Post Facto* clause of Article 1, § 10 of the United States Constitution," because he would have pled "not guilty" to the charge of sexual battery had he known that years later he would be classified as a sex offender based on the *nolo contendere* plea he entered.

4. The Act violates the "Bill of Attainder Clause of 1, § 10 of the United States Constitution."

5.  The Act violates Mr. Bush's right to Equal Protection under the law, because he is being treated as an adult sex offender when he should be treated as a juvenile sex offender.

6.  The Act as applied to him violates his Eighth Amendment rights to be free from cruel and unusual punishment.

7.  The Act denies Mr. Bush of his Substantive and Procedural Due Process rights.

8.  The Act violates Mr. Bush's Fourteenth Amendment right to seek employment.

9.  The Act violates Mr. Bush's First Amendment right to freely associate with his family.

## DEFENDANTS' EXHIBITS

1.  Exhibit A – Petition for Writ of Certiorari in Civil Action No: CV-04-18, filed in the Circuit Court of Montgomery County, Alabama.

2.  Exhibit B – Warrant issued by the State of Florida on February 28, 1984.[1]

3.  Exhibit C – Affidavit of Director Whaley, Executive Director of Classifications for the ADOC.

4.  Exhibit D – Admin. Reg. No. 400, "Classification of Inmates."

---

[1] A certified copy of the redacted warrant did not show the age of the victim. The Escambia County Clerk faxed another copy showing the age of the victim.

5.      Exhibit E – Excerpt from ADOC Classifications Manual.

6.      Exhibit F –Affidavit of Cynthia Dillard, Assistant Executive Director for the Board of Pardons and Paroles ("the Board").

7.      Exhibit G –Affidavit of Sandra Johnson, Criminal Intelligence Analyst for the Sex Offender Registry for the Alabama Bureau of Investigation ("ABI").

8.      Exhibit H –Affidavit of Lisa Harris, Administrative Support Assistant II for the research and Planning Division of the ADOC.

## **DEFENDANTS' RESPONSE**

1.   Insofar as Mr. Bush seeks monetary damages, Defendants, Attorney General King, Director Allen, Colonel Coppage and Director Whaley, named in their official capacities are immune by virtue of sovereign immunity.

2.  Defendant, Director Whaley, named in his individual capacity, is immune by virtue of qualified immunity.

3.  Mr. Bush lacks standing to bring this suit on behalf of homeless individuals.

4.  Defendants deny violating Mr. Bush's Constitutional rights.

5.  Mr. Bush's claims of Due Process and Equal Protection rights violations are without merit.

6. Mr. Bush's *Ex Post Facto* and Bill of Attainder claims are without merit.

7. Mr. Bush filed a Petition for Writ of Certiorari in Alabama State Court, and this Honorable Court should abstain from ruling on the merits of this case.

8. Mr. Bush's 42 U.S.C. § 1983 claims against Director Whaley for classifying him as a sex offender based on false information are barred by the statute of limitations.

9. Defendants request that this Honorable Court consider this report as a Motion for Summary Judgment at such time when this Honorable Court sees fit.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, affidavits and documents submitted to the court show that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986). Once the movant has established that there is no genuine issue, then the burden shifts to the non-movant to rebut the movant's prima facie showing. Celotex Corp. v. Catrett, 477 U.S. 323 (1986). Unless the non-movant can submit substantial evidence that a genuine issue of material fact does exist, the movant is entitled to summary judgment. Id. Merely submitting restated allegations of the complaint is not sufficient to meet the non-movant's burden. Morisky v. Broward County, 80 F.3d. 445, 448-

449 (11th Cir. 1996). This case is ripe for summary judgment because there is no genuine issue of fact to Mr. Bush's claims and the Defendants are entitled to judgment as a matter of law.

## STATEMENT OF UNDISPUTED FACTS

In 2003, Mr. Bush submitted sworn testimony to the Alabama Supreme Court boldly stating, "During and after this time [1992] I have came [SIC] into contact with law enforcement, court, and pardon and parole authorities many times." (Ex. A.) The word "Before" is all that Defendants would add to his statement. Mr. Bush's criminal history is lengthy. Defendants will focus only on those crimes that influence Mr. Bush's status as a sex offender.

On February 28, 1984, the State of Florida issued a warrant for then eighteen-year-old Michael R. Bush for sexual battery on a child and lewd and lascivious assault on a child.[2] Probable cause for the issuance of the warrant was established by a sworn statement of the seven year old victim. (Ex. B.) The warrant indicates that Mr. Bush resided at 4460 Hermitage Road, Mobile, AL. (Ex. B.) It is at this time unknown to the Defendants whether Mr. Bush had any knowledge of the warrant in 1984.

Between 1984 and 1992, Mr. Bush was arrested for various property offenses and escape. Each arrest occurred in Alabama. (Ex. C.)

---

[2] The warrant indicates that the acts occurred four times during December of 1983 through January of 1984. Mr. Bush turned eighteen on January 15, 1984. (Ex. B & DOC #45.)

In 1992, Mr. Bush was arrested in Florida and charged with possession of cocaine and sexual battery on child. (Ex. C.) The sexual battery charge was based on the 1984 warrant issued by the State of Florida. Mr. Bush entered a plea of *nolo contendere* to attempted sexual battery second degree. The judge sentenced Mr. Bush to eight (8) years probation and fined him $265.00. The official court document clearly states that Mr. Bush was adjudged guilty. (Ex. A.)

In August of 2003, after being convicted of several crimes and violating probation, Mr. Bush returned to the ADOC. During his initial intake, Mr. Bush was classified as a sex offender for purposes of ADOC internal classification based on: the ADOC Corrections Classifications Manual, ADOC Admin. Reg. No. 400 "Classification of Inmates," and his criminal background.[3] (Ex. C, D & E.) Mr. Bush has remained classified as a sex offender for purposes of ADOC internal classification since August 2003.

In 2006, Mr. Bush became eligible for parole. On April 21, 2006, as a part of the parole process, Mr. Bush submitted to Officer Diane Wynn ("Officer Wynn"), an institutional parole officer, his parole plan stating where he would live and work upon his release from prison, should he be granted parole. (Ex. F.) That same day, April 21, 2006, Officer Wynn submitted Mr. Bush's parole plan to the Board. (Ex. F.) On April 26, 2006, Mr. Bush was granted parole on the condition that he registered as a sex offender per the Act. (Ex. F.)

---

[3] Criminal background included materials other than the PSI report. See, (Ex. E.)

Prior to Mr. Bush's conditional parole, the Board forwarded his parole plan to the Mobile Probation and Parole Office. (Ex. F.) Mr. Bush's plan was investigated by Eugene Perry ("Agent Perry"). (Ex. F.) On May 23, 2006 Agent Perry determined that Mr. Bush's parole plan was in compliance with the Act. (Ex. F.) That same day, Agent Perry forwarded the results of his investigation back to the Board, and the Board notified the ADOC that Mr. Bush would be released and he would need to complete the Act's requirements for registration before he would be released. (Ex. F & H.)

The ADOC notified the ADPS that Mr. Bush intended to live at 4662 Hermitage Road, Mobile, Alabama 36619, and requested that the ADPS verify that Mr. Bush's living and work plan met the requirements of the Act. (Ex. H.) On May 25, 2006 the ADOC contacted Detective Screws of the Mobile Police Department and requested verification that Mr. Bush's intended address complied with the Act. (Ex. H.) Detective Screws replied the same day stating that the address was too close to a day care facility. (Ex. H.)

Mr. Bush submitted an alternative address, 8725 Crowell Street, Mobile, Alabama 36608. (Ex. G.) On June 19, 2006 the ADOC notified the ADPS that Mr. Bush was to be released on July 5, 2006. (Ex. G.)

Mr. Bush was entered into the ABI Sex Offender Registry. (Ex. G.) However, Mr. Bush *has not been posted to the public site*, pending a determination as to whether the Act applies to Mr. Bush. (Ex. G.)

8

## ARGUMENT OF FACT AND LAW

**I.    Claims against Colonel Coppage**

Ala. Code § 15-20-21(11) defines the ADPS as the RESPONSIBLE AGENCY for criminal sex offenders who are "being released from a jurisdiction outside this state and who is to reside in this state". Mr. Bush is currently residing in a correctional institution within the boundaries of the State of Alabama. When and if Mr. Bush is released back into society it will be from an Alabama facility.

Ala. Code § 15-20-38(a) states "The Director of the ADPS shall promulgate rules establishing as administrative hearing procedure for individuals who are made subject to this article pursuant to paragraph l of subdivision (4) of Ala. Code § 15-20-21. Mr. Bush is subject to the Alabama Code under the provision in § 15-20-21(4)(m). The Director of the ADPS is not empowered to make the determination as to the applicability of the Act to Mr. Bush in this case, although it is clear from an analysis of the statute that the Act applies to the Mr. Bush.

Ala. Code § 15-20-38(b) states, "the director of the Department of Public Safety shall promulgate rules setting forth a listing of offenses from other jurisdictions that are to be considered criminal sex offenses under paragraph l of subdivision (4) of Ala. Code § 15-20-21. Thereafter, any individual convicted of any sex offense set forth in the listing shall immediately be subject to this article and shall not be entitled to an administrative hearing as provided in subsection (a). The Administrative

Law Judges, who are not employed by the ADPS, who hear the Administrative Due Process Hearings set up under subsection (a) have informed the Department that no offenses may be included on a listing until the particular offenses have been appealed through at least the Circuit Courts of the State of Alabama. Currently there are appeals of four Administrative Hearings pending in the Circuit Court of Montgomery County. Clearly this section does not apply to Mr. Bush.

Mr. Bush in this cause fails to state a claim against the Director of the Department of Public Safety for which relief may be granted.


**II.    Claims against Director Whaley**

Plaintiff's claims against Director Whaley, were brought four (4) months after the statute of limitations had run. (Doc. #1) The Plaintiff's claims arising under 42 U.S.C. § 1983 are barred by the statute of limitations. The United States Supreme Court has held that "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." Owens v. Okure, 488 U.S. 235, 249-50, 109 S.Ct. 573, 582 (U.S.N.Y.1989). Ala. Code § 6-2-38(l) provides that the general statute of limitations for personal injury is two years. The time for filing a 42 U.S.C. § 1983 action does not begin to run until the Plaintiff becomes aware of his injury. Calhoun v. Ala. Alcoholic Beverage Control Bd., 705 F.2d 422, 425 (11th Cir. 1983). Mr. Bush was

aware of his injury as early as August 2003. Mr. Bush states in Plaintiff's Rebuttal to Defendant's Supplemental Response to Preliminary Injunction and Amendment to Relief Requested, that he was told by an ADOC classification officer that his pre-sentencing investigation report indicated he pleaded guilty to sexual battery. Doc #32 Ex. 1 ¶ 3. Mr. Bush told the classifications officer that the PSI report was wrong. Id. The classifications officer told Mr. Bush "a few days later" that the PSI report was valid, and that the decision was final.  In December of 2003 Mr. Bush produced a copy of a Florida Court Order that showed Mr. Bush pleaded *nolo contendere* to attempted sexual battery. Mr. Bush's classification remained unchanged, despite proof that the PSI report was incorrect.[4] (Doc. #32, Ex. 1, pp. i-ii)  It is undisputed fact that Plaintiff knew that he was being classified as a sex offender based on a faulty PSI report as of sometime in December 2003. The two year limitation to file suit under 42 U.S.C. § 1983 expired in December 2005. Plaintiff filed this suit on April 3, 2006, four months after the statute of limitations expired.  The Plaintiff's claims against Director Whaley arising under 42 U.S.C. § 1983 are due to be dismissed.

### III.  Claims against Richard Allen.

Mr. Bush has failed to state a claim upon which relief may be granted against Richard Allen, Commissioner of the ADOC. The Act does not refer in any way to the Commissioner of the ADOC. See Ala Code §

---

[4] Mr. Bush filed suit in state court shortly after December 2003.

15-20-20 et. seq. The ADOC is responsible for facilitating Mr. Bush's registration with the ADPS prior to his release. The ADOC cannot force Mr. Bush to register. Mr. Bush is eligible for parole if he registers as a sex offender. The Act states that "Any adult criminal sex offender in violation of this section shall be ineligible for release on probation or parole." Ala. Code § 15-20-22(a)(1). The ADOC merely facilitates the registration process between Mr. Bush and the ADPS. (Ex. F, G & H.) Therefore, Mr. Bush has no claim against Richard Allen.

### IV.    Claims against Troy King.

Mr. Bush has failed to state a claim against Attorney General Troy King upon which relief may be granted. To be successful in this action, Mr. Bush must show that he "has sustained, or is in immediate danger of sustaining, a direct injury as the result of that act." National Viatical, Inc. v. Oxendine, 2006 WL 1071839, *5 (11th Cir. 2006) (citing National Advertising Co. v. City of Miami, 402 F.3d 1335, 1339 (11th Cir. 2005). If Mr. Bush refuses to register as a sex offender, he will not be eligible for parole. Ala. Code § 15-20-22(a)(1). Therefore, Mr. Bush cannot be released from prison prior to registering as a sex offender until he has served out his entire sentence. Until then, Mr. Bush cannot be in violation of the Act. Ala. Code §15-20-22. The Attorney General will not prosecute Mr. Bush for a crime that he has yet to commit. Therefore, Mr. Bush's claim against Attorney General Troy King is not ripe.

**V.    Sovereign immunity precludes any award of monetary damages to the Defendants in their official capacities.**

Mr. Bush's claims against Director Whaley, Richard Allen, Colonel Coppage and Troy King, in their official capacities are due to be dismissed because they are immune from liability for monetary damages.   As the United States Supreme Court has stated:

> "There can be no doubt ... that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit.   *Edelman v. Jordan*, 415 U.S. 651 (1974); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459 (1945); *Worcester County Trust Co. v. Riley*, 302 U.S. 292 (1937).   Respondents do not contend that Alabama has consented to this suit, and it appears that no consent could be given under Art. I, § 14, of the Alabama Constitution, which provides that no consent could be given under Art. I, § 14, of the Alabama Constitution, which provides that 'the State of Alabama shall never be made a defendant in any court of law or equity.'"

Alabama v. Pugh, 438 U.S. 781, 782 (1978).   There has been no consent or wavier of immunity in this case.    Even if Mr. Bush can prove each and every allegation in his Complaint, Defendants are absolutely immune from being sued in their official capacities for an award of monetary damages.


**DEFENDANTS' RESPONSE TO CONSTITUTIONAL CLAIMS**

From the outset, the State asserts that all legislative enactments, including the Act, are presumed to be constitutional.   Town of Vance v. City of Tuscaloosa, 661 So. 2d 739, 742 (Ala. 1995).   In Home Indemnity

13

Co. v. Anders, 459 So.2d 836 (Ala.1984), the Alabama Supreme Court
stated:

> "In determining whether [an] act is constitutional, we are bound
> by the following presumption:
>
>> "'[I]n passing upon the constitutionality of a
>> legislative act, the courts uniformly approach the
>> question with every presumption and intendment in
>> favor of its validity, and seek to sustain rather than
>> strike down the enactment of a coordinate branch of
>> government.  All these principles are embraced in
>> the simple statement that it is the recognized duty of
>> the court to sustain the act unless it is clear beyond
>> reasonable doubt that it is violative of the
>> fundamental law.'"

459 So.2d at 840.

In his complaint, the Plaintiff contends that the Act is violates the
Ex Post Facto, Due Process, and Equal Protection clauses of the United
States Constitution.  The Plaintiff also contends that the Act violates his
Eighth Amendment right to be free from cruel and unusual punishment,
and his rights as guaranteed by parallel clauses of the Alabama
Constitution of 1901.  These contentions, however, are untenable in the
light of existing law.

## I.  The Plaintiff has no right to individualized procedural due process prior to enforcement of the Community Notification Act.

The plaintiff contends that the Act deprives him of his life,
property, and reputation while denying his right to procedural due
process.  The plaintiff is not entitled to procedural due process because
the enforcement of the Act would not deprive him of a property right or

any other legally protected liberty interest.  Although the Act strictly places restrictions on where the plaintiff may reside and work and with whom he may live, persons found to have committed a criminal sex offense have a reduced expectation of privacy because of the public's interest in safety and in the effective operation of government.  Moreover, the danger of recidivism posed by criminal sex offenders and the protection of the public from these offenders is a paramount concern or interest to government.  Additionally, the Act does not allow the State to physically invade or otherwise appropriate the plaintiff's property.  Even if enforcing the Act were to deprive the plaintiff of his property, he nonetheless has no right to procedural due process in this case, because no such right attends legislative enactments—such as the Community Notification Act—that affect a general class of persons—such as a class comprised of convicted sex offenders.  "When a legislature enacts a law … that affects a general class of persons, all of those persons have received procedural due process by the legislative process itself and they have no right to individual attention.  The challenges to such laws … must be based on their substantive compatibility with constitutional guarantees."  United States v. LULAC, 793 F.2d 636, 648 (5th Cir. 1986). See also Atkins v. Parker, 472 U.S. 115, 129-30, 105 S. Ct. 2520, 2529 (1985); Richmond Boro Gun Club, Inc. v. City of New York, 97 F.3d 681, 689 (2nd Cir. 1996); Jackson Court Condominiums, Inc. v. City of New Orleans, 874 F.2d 1070, 1074 (5th Cir. 1989); Gillespie v. City of

Indianapolis, 13 F. Supp. 2d 811, 825 (S.D. Ind. 1998); Sammy's of Mobile, Ltd. v. City of Mobile, 928 F. Supp. 1116, 1123 (S.D. Ala. 1996); 2 ROTUNDA & NOWAK, TREATISE ON CONSTITUTIONAL LAW: SUBSTANCE AND PROCEDURE § 17.8 at 646 (2d ed. 1992).  This principle derives from the U.S. Supreme Court's decision in Bi-Metallic Investment Co. v. State Bd. of Equalization, 239 U.S. 441, 36 S. Ct. 141 (1915), in which Justice Holmes, writing for the Court, stated:

> "When a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption.  The Constitution does not require all public acts to be done in town meeting or an assembly of the whole.  General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard.  Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule."

239 U.S. at 445, 36 S. Ct. at 142.

Finally, even if the plaintiff were generally entitled to procedural due process, he is not so entitled in this case because there is no factual dispute as to the applicability of the Act to the plaintiff under his current circumstances.   "Generally, if government action will deprive an individual of a significant property interest, that individual is entitled to an opportunity to be heard. ... However, a hearing is not required if there is no factual dispute." Sec. and Exch. Comm'n v. Elliott, 953 F.2d 1560, 1566 (11th Cir. 1992) (citing Codd v. Velger, 429 U.S. 624, 97 S. Ct. 882 (1977) (emphasis added).  See also Oklahoma Educ. Ass'n v. Alcoholic

16

Beverage Laws Enforcement Comm'n, 889 F.2d 929, 936 (10th Cir. 1989); 2 ROTUNDA & NOWAK, TREATISE ON CONSTITUTIONAL LAW: SUBSTANCE AND PROCEDURE § 17.8 at 645-46 (2d ed. 1992). In the present case, there is simply no factual dispute to be resolved. In 1992, the plaintiff was arrested in Florida and charged with possession of cocaine and sexual battery on a child. (Ex. A.)   The sexual battery charge was based on a 1984 warrant issued by the State of Florida. (Ex. B.)   Mr. Bush entered a plea of *nolo contendere* to attempted sexual battery second degree. (Ex. A.)   The official court document clearly states that Mr. Bush was adjudged guilty. (Ex. A.)

Alabama Code § 15-20-21(1) defines an adult criminal sex offender as "A person convicted of a criminal sex offense, *including a person who has pleaded nolo contendere* to a criminal sex offense, regardless of whether adjudication was withheld." See § 15-20-21(1) (Supp. 2005) (emphasis added). In this instance, the facts relate to attempted sexual battery second degree which is a criminal sex offense under Alabama law. See Ala. Code § 15-20-21 (4)(m) (Supp. 2005). Because it is undisputable that the terms of the Act plainly apply to the plaintiff, there is no danger that the provisions of the Act will be wrongfully applied to him. Thus, there is no need to conduct a hearing or take any further steps—i.e. to give the plaintiff procedural due process—before the Act's provisions are brought to bear on the plaintiff.

In the light of the foregoing, the State submits that Mr. Bush cannot prove a set of facts that would entitle him to relief under the theories proffered in his complaint. For that reason, the plaintiff's complaint is due to be dismissed for failure to state a claim upon which relief can be granted.

## II.    The Plaintiff's equal protection rights have not been violated by the Community Notification Act.

The Plaintiff complains that application of the Community Notification Act to him violates his equal protection rights because the State does not consider a *nolo contendere* plea as a conviction for purposes other than the Act. In order to allege a claim cognizable under the Equal Protection Clause, a Plaintiff must, at the very least, state that he is similarly situated with other persons who were treated differently and that the reason for the differential treatment was based on race, religion, national origin, poverty or some other constitutionally protected interest. Jones v. Ray, 279 F.3d 944, 947 (11th Cir. 2001); Damiano v. Florida Parole and Probation Commission, 785 F.2d 929, 932-33 (11th Cir. 1986). Bush has failed to identify any similarly situated inmate who has been treated differently under the Act. Accordingly, he has not established that he is likely to succeed on the merits of his equal protection claim.

Moreover, Mr. Bush alleges the Act violated his rights to equal protection under the law, because he is being treated as an adult sex offender when he should be treated as a juvenile sex offender. Bush knowingly and willfully entered a plea of *nolo contendere* to attempted sexual battery second degree as an adult. The judge sentenced Mr. Bush as an adult to eight (8) years probation and fined him $265.00. The official court document clearly states that Mr. Bush was adjudged guilty as an adult. (Ex. A.) Therefore, he has not established that he is likely to succeed on the merits of his equal protection claim. For that reason, the plaintiff's complaint is due to be dismissed for failure to state a claim upon which relief can be granted.

**III.  The Community Notification Act does not violate either the Ex Post Facto or Bill Attainder Clauses of the United States Constitution.**

The Plaintiff alleges the Act violates the "*Ex Post Facto* clause of Article 1, § 10 of the United States Constitution," because he would have pled "not guilty" to the charge of sexual battery had he known that years later he would be classified as a sex offender based on the *nolo contendere* plea he entered.

The United States Supreme Court upheld Kansas's Sexually Violent Predator Act against a challenge that it violated the *Ex Post Facto Clause*. Kansas v. Hendricks, U.S. ___, 117 S. Ct. 2072 (1997). In upholding the Kansas statute, the Supreme Court held that "the *Ex Post Facto Clause*,

which forbids the application of any new punitive measure to a crime already consummated, has been interpreted to apply to penal statutes." Hendricks at 2086. See also Maples v. McDonald, 668 So. 2d 790, 793 (Ala. Civ. App. 1995). In deciding that the Kansas Act was not an *ex post facto* law, the Supreme Court held that the act did not impose additional punishment.

The Court explained that, in order to determine whether a statute is punitive in nature, it proceeds through a two-step inquiry. The first inquiry is a matter of statutory construction. The second inquiry will only reject the "legislature's manifest intent where a party challenging the statute provides 'the clearest proof' that the statutory scheme is so punitive in purpose or effect as to negate the State's intention." Hendricks at 2082 (emphasis added).

The preamble to Alabama's Community Notification Act sets out what the Alabama Legislature intended when it enacted the statute. There, the legislature stated that it acted due to the "danger of recidivism posed by criminal sex offenders." The preamble also states that the Community Notification Act was intended both as a tracking tool for law enforcement agencies in the investigation of criminal sex offenders, as well as for the protection of the public, especially children, from the dangers posed by criminal sex offenders. The primary purpose of the notification provisions is to facilitate the disclosure of information about sex offenders so that the community can protect itself and its children.

20

See Lambert v. California 355 U.S 225, 229, 78 S. Ct. 240, 243 (1957) (Felony registration is "[a]t most ... a law enforcement technique designed for the convenience of law enforcement agencies through which a list of the names and addresses of felons then residing in a given community is compiled.  The disclosure is merely a compilation of former convictions already publicly recorded in the jurisdiction where obtained").  As the Alabama Supreme Court stated in Clayton v. Board of School Commissioners, 552 So. 2d 152, 154 (Ala. 1989), "[A] statute is not rendered retroactive simply because it draws upon facts and information existing prior to its enactment."  The mere fact that that the Community Notification Act may be "tied to criminal activity is insufficient to render the statute punitive." Hendricks at 2082.

In regard to the Hendricks decision's second prong, the plaintiff has not proffered "the clearest proof" needed to demonstrate that the Act is so punitive in purpose or effect as to negate the legislature's expressed intention.  In fact, he has not made any allegations whatsoever that would support a determination that the Act indeed has such a pervasive punitive effect.

Virtually every court that has addressed the issue of whether community notification statutes are *ex post facto* laws has applied the analysis employed in Hendricks, and has reached the conclusion that such legislative acts, which are designed to give the public notice of sex

offenders in their communities, are not unconstitutional.[5] Alabama's Community Notification Act is a remedial and regulatory statute, not a punitive one. See Robinson v. State, 1998 WL 599472, No. CR-97-0607 (Ala. Crim. App. Sept. 11, 1998) (holding that the registration and notification requirements of the Community Notification Act are not punishment). Furthermore, the inclusion of youthful offenders and juveniles in the Act signals the legislature's intent to create broad coverage so that children and other vulnerable groups are protected from harm. The legislature did not act with punitive intent, and any arguably punitive impact on those persons subject to the provisions of the Act is simply an incidental consequence of the statute's remedial provisions. Although some consequences may result from the enforcement of the Act, that alone does not render it an *ex post facto* law, nor does it otherwise make the Act unconstitutional. The legislature's intent was not to punish an individual for past activity. Rather, the legislature intended to create a regulatory scheme, and the "restriction of [any] individual comes about as a relevant incident to a regulation of a present situation." De Veau v. Braisted, 363 U.S. 144, 160, 80 S. Ct. 1146, 1155 (1960). Therefore, the

---

[5] Arizona Dept. of Public Safety v. Superior Court, 949 P. 2d 983 (Ariz. Ct. App. 1997); People v. Fioretti, 63 Cal. Rptr. 2d 367 (Cal. Ct. App. 1997); Ortega v. State, 712 So. 2d 833 (Fla. Dist. Ct. App. 1998); State v. Costello, 643 A.2d 531 (N.H. 1994) People v. Starnes, 653 N.E. 2d 4, 210 (Ill. App. Ct. 1995); State v. Pickens, 558 N.W. 2d 396 (Iowa 1997); State v. Hemby, 957 P. 2d 428 (Kan. 1998); Doe v. Attorney General, 686 N.E.2d 1007 (Mass. 1997); State v. Manning, 532 N.W. 2d 244 (Minn. Ct. App. 1995); In re Parolee, 668 N.Y.S. 2d 53 (N.Y. App. Div. 1998); M.G. v. Travis, 667 N.Y.S. 2d 11 (N.Y. App. Div. 1997); State v. Bruns, 1998 WL 412451 (Ohio Ct. App. Jul 24, 1998); Williford v. Board of Parole and Post-Prison Supervision, 904 P. 2d 1074 (Or. Ct. App. 1995); Commonwealth. v. Mountain, 711 A.2d 473 (Pa. Super. Ct. 1998); Commonwealth. v. Gaffney, 702 A. 2d 565 (Pa. Super. Ct. 1997); Perez v. State, 938 S.W. 2d 761 (Tex. Crim. App. 1997; Kitze v. Commonwealth, 475 S.E. 2d 830 (Va. Ct. App. 1996); Snyder v. State, 912 P. 2d 1127 (Wyo. 1996); State v. Ward, 869 P. 2d 1062 (Wash. 1994).

Act is not an *ex post facto law*, and the petitioner's arguments to the contrary should be rejected.

**IV.    The Community Notification Act does not violate Mr. Bush's Eighth Amendment right to be free from cruel and unusual punishment.**

Mr. Bush claims the Community Notification Act violates his Eighth Amendment right to be free from cruel and unusual punishment. "The standards for judging whether a sentence amounts to cruel and unusual punishment are whether the conditions of confinement shock the conscience, whether the sentence is greatly disproportionate to the offense, or whether it offends evolving notions of decency." U.S. v. Gamboa, 543 F. 2d 545, 548 (5th Cir. 1976).

Courts determine if a punishment is "cruel and unusual" under evolving standards of decency. Atkins v. Va., 536 U.S. 304, 322 (2002); Trop v. Dulles, 356 U.S. 86, 101 (1958).  Legislation is the "clearest and most reliable objective evidence of contemporary values." Penry v. Lynaugh, 492 U.S. 302, 331 (1989).  "Judgments about the appropriate punishment for an offense belong in the first instance to the legislature." U.S. v. Bajakajian, 524 U.S. 321, 336 (1998).  "Reviewing courts...should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." Solem v. Helm, 463 U.S. 277, 290 (1983).  "The legislature

selects the range of punishments" and it is the duty of the courts to "uphold the legislature if there is any rational basis for so doing." Rummel v. Estelle, 587 F.2d 651, 655 (5th Cir. 1978) (recidivist statute mandating a life sentence to repeat offenders is not unconstitutional even if the offenses were nonviolent). A petitioner does not discharge his burden because he would be treated better in another state or can come up with a more rational system than the one adopted by the legislature. Rummel, 587 F.2d at 655.

The preamble to Alabama's Community Notification Act clearly sets out what the Alabama Legislature intended when it enacted the statute. There, the legislature stated that it acted due to the "danger of recidivism posed by criminal sex offenders." Ala. Code § 15-20-20.1. Moreover, § 13A-11-200(a) of the Code states, "The Legislature declares that its intent in imposing certain reporting and registration requirements on criminal sex offenders is to protect the public, *especially children*, from the dangers posed by criminal sex offenders and *not to further punish such offenders*." Ala. Code § 13A-11-200(a) (emphasis added).

Punishment should not be prescribed arbitrarily or in an irrational manner. Woodson v. N.C., 428 U.S. 280, 303 (1976). If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." Bajakajian, 524 U.S. at 337. Proportionality analysis is "guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences

imposed on other criminals in the same jurisdiction; and (iii) the sentence imposed for commission of the same crime in other jurisdictions." Solem v. Helm, 463 U.S. 277, 292 (1983).   In this instance, the gravity of Mr. Bush's offense, a criminal sex offense against a child, warrants certain restrictions.   Persons found to have committed a sex offense have a reduced expectation of privacy because of the public's interest in safety and in the effective operation of government.  In balancing offender's due process and other rights, and the interests of public security, the Legislature has found that releasing information about criminal sex offenders to law enforcement agencies and, providing access to or releasing such information about criminal sex offenders to the general public, will further the primary government interest of protecting vulnerable populations and in some instances the public, from potential harm.   Moreover, residency, employment, association, and loitering restrictions for criminal sex offenders provide additional protections to vulnerable segments of the public such as schools and child care facilities.   "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences [will be] exceedingly rare." Id. at 289-90.

"A punishment must be viewed as it occurs in the real world" not considering "academic possibilities." Rummel v. Estelle, 587 F.2d at 655. "The Eighth Amendment outlaws cruel and unusual 'punishments,' not 'conditions.'" Farmer v. Brennan, 511 U.S. 825, "Conditions that cannot

be said to be cruel and unusual under contemporary standards are not unconstitutional" even if restrictive or harsh, as "they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981) (double celling of inmates at a particular facility was not cruel and unusual punishment). Mr. Bush is a criminal sex offender and the Community Notification Act appropriately applies to him.

In the light of the foregoing, the State submits that Mr. Bush cannot prove a set of facts that would entitle him to relief under the theories proffered in his complaint. For that reason, Mr. Bush's Complaint is due to be dismissed for failure to state a claim upon which relief can be granted.

## **CONCLUSION**

Based on the foregoing, Defendants **Paul Whaley, Mike Coppage, Richard Allen, and Troy King**, respectfully request that this court consider treating this Special Report as a Motion for Summary Judgment, and enter judgment in favor of the Defendants.

RESPECTFULLY SUBMITTED,

TROY KING
ATTORNEY GENERAL
KIN047

/s/ *J. Matt Bledsoe*_____
J. Matt Bledsoe (BLE 006)
ASSISTANT ATTORNEY GENERAL
Counsel for Defendants, Troy King,
 Richard Allen and Paul Whaley


/s/ *Joshua Bearden*_____
Joshua Bearden (BEA 070)
ASSISTANT ATTORNEY GENERAL
Counsel for Defendants, Troy King,
 Richard Allen and Paul Whaley


OF COUNSEL:

OFFICE OF THE ATTORNEY GENERAL
11 South Union Street
Montgomery, AL  36130
(334) 242-7300
(334) 242-2433 (fax)




 /s/  *Michael W. Robinson*_____
Michael W. Robinson  (ROB123)
Counsel for Defendant Coppage


OF COUNSEL:

ALABAMA DEPARTMENT OF
  PUBLIC SAFETY-LEGAL UNIT
PO Box 1511
Montgomery, AL  36102-1511
(334) 242-4392

## CERTIFICATE OF SERVICE

I hereby certify that I have, this 28th day of July, 2006, served a copy of the foregoing on the plaintiff, by placing same in the United States Mail, postage prepaid and properly addressed as follows:

Michael Bush, #149363
Limestone Correctional Facility
28779 Nick Davis Road
Harvest, AL  35749-7009


 /s/  *J. Matt Bledsoe*
OF COUNSEL

28