IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **MICHAEL R. BUSH, #149363** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| **VS.** ) | **CASE NO.: 2:06-CV-292-MHT** |
| ) | |
| **PAUL WHALEY, et al.** ) | |
| ) | |
|     **Defendants.** ) | |

**DEFENDANTS' JOINT SUPPLEMENTAL SPECIAL REPORT**

    **COME NOW**, the Defendants, **Paul Whaley, Richard Allen, Colonel Mike Coppage and Troy King,** and in accordance with this Honorable Court's Order of July 28, 2006, do hereby submit the following Special Report.

**PARTIES**

1. The Plaintiff, Michael Bush, AIS# 149363, ("Mr. Bush") is an Alabama Department of Corrections ("ADOC") inmate, who is presently incarcerated at Limestone Correctional Facility ("Limestone") in Harvest, Alabama.

2. Mr. Bush has named the following Defendants:

    a. Paul Whaley ("Director Whaley"), Director, Classification Division of the ADOC.

    b. Richard Allen ("Commissioner Allen"), Commissioner of the ADOC.

   c. Troy King ("Attorney General King"), Attorney General of the State of Alabama.

   d. Colonel Mike Coppage ("Colonel Coppage"), Director of the Alabama Department of Public Safety ("ADPS").

**PLAINTIFF'S ALLEGATIONS AND DEMANDS**

Mr. Bush seeks declaratory relief, a temporary restraining order and damages. Mr. Bush alleges in his complaint that Defendants have violated his constitutional rights. Specifically, Mr. Bush alleges:

1. Ala. Code § 15-20-20, et seq. (1975), otherwise known as "The Community Notification Act" ("the Act"), violates Mr. Bush's due process rights because application of the Act would deprive Mr. Bush of life, liberty, property, and reputation.

2. The Act violates Mr. Bush's right to Equal Protection under the law.

3. The Act violates the "*Ex Post Facto* clause of Article 1, § 10 of the United States Constitution," because he would have pled "not guilty" to the charge of sexual battery had he known that years later he would be classified as a sex offender based on the *nolo contendere* plea he entered.

4. The Act violates the "Bill of Attainder Clause of 1, § 10 of the United States Constitution."

2

5. The Act violates Mr. Bush's right to Equal Protection under the law, because he is being treated as an adult sex offender when he should be treated as a juvenile sex offender.

6. The Act as applied to him violates his Eighth Amendment rights to be free from cruel and unusual punishment.

7. The Act denies Mr. Bush of his Substantive and Procedural Due Process rights.

8. The Act violates Mr. Bush's Fourteenth Amendment right to seek employment.

9. The Act violates Mr. Bush's First Amendment right to freely associate with his family.

## DEFENDANTS' EXHIBITS

1. Exhibit A – Petition for Writ of Certiorari in Civil Action No: CV-04-18, filed in the Circuit Court of Montgomery County, Alabama.

2. Exhibit B – State Court documents and case action summary for case number CV-04-18

3. Exhibit C – State Court documents and case action summary for case number CV-04-1268

## DEFENDANTS' SUPPLEMENTAL RESPONSE

1. Insofar as Mr. Bush seeks monetary damages, Defendants, Attorney General King, Director Allen, Colonel Coppage and Director Whaley, named in their official capacities are immune by virtue of sovereign immunity.

2. Defendants deny violating Mr. Bush's Constitutional rights.

3. Mr. Bush filed a Petition for Writ of Certiorari in Alabama State Court, and this Honorable Court should abstain from ruling on the merits of this case. See (Ex. B.)

4. Defendants request that this Honorable Court consider this report as a Motion for Summary Judgment at such time when this Honorable Court sees fit.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, affidavits and documents submitted to the court show that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986). Once the movant has established that there is no genuine issue, then the burden shifts to the non-movant to rebut the movant's prima facie showing. Celotex Corp. v. Catrett, 477 U.S. 323 (1986). Unless the non-movant can submit substantial evidence that a genuine issue of material fact does exist, the movant is entitled to summary judgment. Id. Merely submitting restated allegations of the complaint is not sufficient to meet

the non-movant's burden. Morisky v. Broward County, 80 F.3d. 445, 448-449 (11th Cir. 1996). This case is ripe for summary judgment because there is no genuine issue of fact to Mr. Bush's claims and the Defendants are entitled to judgment as a matter of law.

### STATEMENT OF UNDISPUTED FACTS

In 2003, Mr. Bush submitted sworn testimony to the Alabama Supreme Court boldly stating, "During and after this time [1992] I have came [SIC] into contact with law enforcement, court, and pardon and parole authorities many times." (Ex. A.) The word "Before" is all that Defendants would add to his statement. Mr. Bush's criminal history is lengthy. Defendants will focus only on those crimes that influence Mr. Bush's status as a sex offender.

On February 28, 1984, the State of Florida issued a warrant for then eighteen-year-old Michael R. Bush for sexual battery on a child and lewd and lascivious assault on a child.[1] Probable cause for the issuance of the warrant was established by a sworn statement of the seven year old victim. (Ex. B.) The warrant indicates that Mr. Bush resided at 4460 Hermitage Road, Mobile, AL. (Ex. B.)  It is at this time unknown to the Defendants whether Mr. Bush had any knowledge of the warrant in 1984.

Between 1984 and 1992, Mr. Bush was arrested for various property offenses and escape. Each arrest occurred in Alabama. (Ex. C.)

---

[1] The warrant indicates that the acts occurred four times during December of 1983 through January of 1984. Mr. Bush turned eighteen on January 15, 1984. (Ex. B & DOC #45.)

5

In 1992, Mr. Bush was arrested in Florida and charged with possession of cocaine and sexual battery on child. (Ex. C.) The sexual battery charge was based on the 1984 warrant issued by the State of Florida. Mr. Bush entered a plea of *nolo contendere* to attempted sexual battery second degree. The judge sentenced Mr. Bush to eight (8) years probation and fined him $265.00. The official court document clearly states that Mr. Bush was adjudged guilty. (Ex. A.)

In August of 2003, after being convicted of several crimes and violating probation, Mr. Bush returned to the ADOC. During his initial intake, Mr. Bush was classified as a sex offender for purposes of ADOC internal classification based on: the ADOC Corrections Classifications Manual, ADOC Admin. Reg. No. 400 "Classification of Inmates," and his criminal background.[2] (Ex. C, D & E.) Mr. Bush has remained classified as a sex offender for purposes of ADOC internal classification since August 2003.

In 2006, Mr. Bush became eligible for parole. On April 21, 2006, as a part of the parole process, Mr. Bush submitted to Officer Diane Wynn ("Officer Wynn"), an institutional parole officer, his parole plan stating where he would live and work upon his release from prison, should he be granted parole. (Ex. F.) That same day, April 21, 2006, Officer Wynn submitted Mr. Bush's parole plan to the Board. (Ex. F.) On April 26, 2006, Mr. Bush was granted parole on the condition that he registered as a sex offender per the Act. (Ex. F.)

---

[2] Criminal background included materials other than the PSI report. See, (Ex. E.)

Prior to Mr. Bush's conditional parole, the Board forwarded his parole plan to the Mobile Probation and Parole Office. (Ex. F.) Mr. Bush's plan was investigated by Eugene Perry ("Agent Perry"). (Ex. F.) On May 23, 2006 Agent Perry determined that Mr. Bush's parole plan was in compliance with the Act. (Ex. F.) That same day, Agent Perry forwarded the results of his investigation back to the Board, and the Board notified the ADOC that Mr. Bush would be released and he would need to complete the Act's requirements for registration before he would be released. (Ex. F & H.)

The ADOC notified the ADPS that Mr. Bush intended to live at 4662 Hermitage Road, Mobile, Alabama 36619, and requested that the ADPS verify that Mr. Bush's living and work plan met the requirements of the Act. (Ex. H.) On May 25, 2006 the ADOC contacted Detective Screws of the Mobile Police Department and requested verification that Mr. Bush's intended address complied with the Act. (Ex. H.) Detective Screws replied the same day stating that the address was too close to a day care facility. (Ex. H.)

Mr. Bush submitted an alternative address, 8725 Crowell Street, Mobile, Alabama 36608. (Ex. G.) On June 19, 2006 the ADOC notified the ADPS that Mr. Bush was to be released on July 5, 2006. (Ex. G.)

Mr. Bush was entered into the ABI Sex Offender Registry. (Ex. G.) However, Mr. Bush ***has not been posted to the public site***, pending a determination as to whether the Act applies to Mr. Bush. (Ex. G.)

7

## ARGUMENT OF FACT AND LAW

From the outset, the State asserts that all legislative enactments, including the Community Notification Act ("the Act"), are presumed to be constitutional. Town of Vance v. City of Tuscaloosa, 661 So. 2d 739, 742 (Ala. 1995). In Home Indemnity Co. v. Anders, 459 So.2d 836 (Ala.1984), the Alabama Supreme Court stated:

> "In determining whether [an] act is constitutional, we are bound by the following presumption:
>
> "'[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law.'"

459 So.2d at 840.

In his complaint, the Plaintiff contends that the Act violates the Ex Post Facto, Due Process, and Equal Protection clauses of the United States Constitution. The Plaintiff also contends that the Act violates his Eighth Amendment right to be free from cruel and unusual punishment, and his rights as guaranteed by parallel clauses of the Alabama Constitution of 1901. Finally, the Plaintiff asserts that the Act violates his First Amendment right to freely associate, to make personal family choices and to seek and obtain employment. These contentions, however, are untenable in the light of existing law.

> **V.    The Community Notification Act does not violate Mr. Bush's 1st Amendment right to freely associate or any substantive due process right to make personal family choices under the 14th Amendment.**

Mr. Bush next alleges the Community Notification Act violates his First Amendment right to freely associate and his substantive due process right to make personal family choices. In <u>Roberts v. United States Jaycees</u>, 468 U.S. 609 (1984), the United States Supreme Court stated:

> [Our] decisions have referred to constitutionally protected 'freedom of association' in two distinct senses. In one line of decisions, the Court has concluded that choices to enter into certain intimate human relationships must be secured against undue intrusion by the State because [it is a fundamental] personal liberty. In another set of decisions, the Court has recognized a right to associate for the purposes of engaging in those activities protected by the First Amendment-speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties."

468 U.S. 609 (1984).

> **A.    The Community Notification Act does not violate Mr. Bush's substantive due process right to freedom of personal choice in matters of marriage and family because, as a convicted criminal sex offender, he has a reduced expectation of privacy.**

In <u>Moore v. City of East Cleveland</u>, 431 U.S. 494, 97 S.Ct. 1932 (1977), the United States Supreme Court acknowledged, "This Court has long recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause

9

of the Fourteenth Amendment." Moore v. City of East Cleveland, 431 U.S. at 499 (quoting Cleveland Board of Education v. Lafleur, 414 U.S. 632, 639-640, 94 S.Ct. 791, 796, 39 L.Ed.2d 52 (1974).  The Supreme Court has expressed extreme reluctance to expand this concept, however, stating that it would do so only with the utmost care. Washington v. Glucksberg, 521 U.S. 702, 720, 117 S.Ct. 2302, 138 L.Ed.2d 772 (1997).  Therefore, in order to be successful, a substantive due process claim must be "deeply rooted in the Nation's history and tradition" and the asserted liberty carefully described. Id. at 720-21.  Because of this high threshold, the Supreme Court has recognized only a very limited number of substantive due process rights:

> [I]n addition to the specific freedoms protected by the Bill of Rights, the "liberty" specially protected by the Due Process Clause includes the right to marry, Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); to have children, Skinner v. Oklahoma ex rel. Williamson, 316, U.S. 535, 62 S.Ct. 1110, 86 L.Ed.1655 (1942); to direct the education and upbringing of one's children, Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); to marital privacy, Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); to use contraception, Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); to bodily integrity, Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), and to abortion, [Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992)].

Id. at 720.  When a statute infringes on a right that is deemed to be fundamental, "courts will review the law under a strict scrutiny test and

uphold it only when it is 'narrowly tailored to serve a compelling state interest.'" Moore, 410 F.3d at 1343 (quoting Reno v. Flores, 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993)). A law that does not implicate fundamental rights need only be "rationally related to legitimate government interests." Id. at 1345 (quoting Glucksberg, 521 U.S. at 728).

The residency restrictions do not implicate any fundamental right of Mr. Bush that would trigger strict scrutiny of the statute. In Reno v.Flores, 507 U.S. 292, 113 S.Ct. 1439 (1993), the Supreme Court's admonished that "'[s]ubstantive due process' analysis must begin with a careful description of the asserted right, for '[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.'" Reno v. Flores, 507 U.S. at 302. In Moore, the Court held unconstitutional a zoning ordinance that defined "family" in such a way as to prohibit a grandmother and her two grandsons from living together in an area designated for "single family" dwellings. The Court concluded that the governmental interests advanced by the city-the prevention of overcrowding, minimizing traffic and parking congestion and avoiding an undue financial burden on the school system- were insufficient to justify an ordinance that disturbed the family. In this instance, Mr. Bush alleges that the Community Notification Act infringes on his right to privacy and the right of his family to live together. He alleges the law affects his relations with his family and that the Act's restrictions prevent him from choosing with whom he may

11

reside. Indeed, the Act places restrictions on where the plaintiff may reside and work and with whom he may live. Unlike the petitioners in <u>Moore</u>, however, persons found to have committed a criminal sex offense, such as Mr. Bush, have a reduced expectation of privacy because of the public's interest in safety and in the effective operation of government. Moreover, the danger of recidivism posed by criminal sex offenders and the protection of the public from these offenders is a paramount concern or interest to government. The importance of the governmental interests advanced and the extent to which they are served by the challenged statute are legitimate.

In the light of the foregoing, the Defendants submit that Mr. Bush cannot prove a set of facts that would entitle him to relief under the theories proffered in his complaint. For that reason, the plaintiff's complaint is due to be dismissed for failure to state a claim upon which relief can be granted.

  **B. The Community Notification Act does not violate Mr. Bush's First Amendment right to freely associate.**

Moreover, in light of the constitutional safeguards generally provided to citizens, the nature and degree of constitutional protection afforded freedom of association claims may vary depending on the extent to which one or the other aspect of the constitutionally protected liberty is at stake in a given case. Simply put, in some instances, the right to associate is not absolute. Infringements on the right to associate are justified by regulations adopted to serve compelling state interests that

cannot be achieved through means significantly less restrictive of associational freedoms. As noted, Alabama's primary governmental interest is the protection of the public from the dangers posed by criminal sex offenders. Mr. Bush is a convicted sex offender. (Ex. A.)

The Community Notification Act does not aim at the suppression of any protected speech, does not distinguish between prohibited and permitted activity on the basis of viewpoint, and does not license enforcement authorities to administer the statute on the basis of such constitutionally impermissible criteria. Instead, the Act reflects Alabama's commitment to protecting families, especially children, from the dangers posed by criminal sex offenders and to providing law enforcement with a tracking tool for the investigation and whereabouts of criminal sex offenders. The primary purpose of the notification provisions is to facilitate the disclosure of information about sex offenders so that the community can protect itself and its children. See Lambert v. California 355 U.S 225, 229, 78 S. Ct. 240, 243 (1957) (Felony registration is "[a]t most ... a law enforcement technique designed for the convenience of law enforcement agencies through which a list of the names and addresses of felons then residing in a given community is compiled. The disclosure is merely a compilation of former convictions already publicly recorded in the jurisdiction where obtained").

In applying the Act to Mr. Bush, the State has advanced those interests through the least restrictive means of achieving its ends. Indeed,

Mr. Bush has failed to demonstrate that the Act imposes any unwarranted burdens on his familial rights or his freedom of association. In the light of the foregoing, the State submits that Mr. Bush cannot prove a set of facts that would entitle him to relief under the theories proffered in his complaint. Therefore, the plaintiff's complaint is due to be dismissed for failure to state a claim upon which relief can be granted.

### VI. The Community Notification Act does not create an occupational disadvantage for criminal sex offenders.

Mr. Bush alleges the Act prevents him from seeking and obtaining employment by suggesting the Community Notification Act creates a shaming punishment against him. Any stigma associated with the Act results not from public display for ridicule and shaming but from the dissemination of accurate information about Mr. Bush's extensive criminal record, most of which is already public. Nothing in Mr. Bush's argument provides any evidence that the Act has led to any substantial occupational disadvantages for him that would not have otherwise occurred. Employers could conduct background checks on the criminal records of prospective employees even with the Act not in force.

In <u>Smith v. Doe</u>, 538 U.S. 84, 86, 123 S.Ct. 1140 (2002), the United States Supreme Court stated as follows:

> Although the public availability of the information may have a lasting and painful impact on the convicted sex offender, these consequences flow not from the Act's registration and dissemination provisions, but from the fact of conviction, already a matter of public record. The State makes the facts underlying the offenses and the resulting convictions accessible so members of the

14

> public can take the precautions they deem necessary before dealing with the registrant.

538 U.S. at 101, 123 S.Ct. at 1151.

The United States Supreme Court stated, "[W]here a legislative restriction is an incident of the State's power to protect the health and safety of its citizens, it will be considered as evidencing an intent to exercise that regulatory power, and not a purpose to add to the punishment." Smith v. Doe, 538 U.S. at 93-94, 123 S.Ct. 1140 (quoting Flemming v. Nestor, 363 U.S. 603, 616, 80 S.Ct. 1367 (1960))(internal marks omitted).

Releasing information about criminal sex offenders to law enforcement agencies and, providing access to or releasing such information about criminal sex offenders to the general public, will further the primary government interest of protecting vulnerable populations and in some instances the public, from potential harm. Finally, the Legislature has determined that residency and employment restrictions for criminal sex offenders provide additional protections to vulnerable segments of the public such as schools and child care facilities.

In conclusion, the State submits that Mr. Bush cannot prove a set of facts that would entitle him to relief under any of the theories proffered in his complaint. Therefore, the plaintiff's complaint is due to be dismissed for failure to state a claim upon which relief can be granted.

## CONCLUSION

Based on the foregoing, Defendants **Paul Whaley, Mike Coppage, Richard Allen, and Troy King**, respectfully request that this court consider treating this Special Report as a Motion for Summary Judgment, and enter judgment in favor of the Defendants.

RESPECTFULLY SUBMITTED,

TROY KING
ATTORNEY GENERAL
KIN047


/s/ *J. Matt Bledsoe*_____
J. Matt Bledsoe (BLE 006)
ASSISTANT ATTORNEY GENERAL
Counsel for Defendants, Troy King,
Richard Allen and Paul Whaley


/s/ *Joshua Bearden*_____
Joshua Bearden (BEA 070)
ASSISTANT ATTORNEY GENERAL
Counsel for Defendants, Troy King,
Richard Allen and Paul Whaley


OF COUNSEL:

OFFICE OF THE ATTORNEY GENERAL
11 South Union Street
Montgomery, AL  36130
(334) 242-7300
(334) 242-2433 (fax)

                                           /s/ *Michael W. Robinson*
                                          Michael W. Robinson  (ROB123)
                                          Counsel for Defendant Coppage

OF COUNSEL:

ALABAMA DEPARTMENT OF
PUBLIC SAFETY-LEGAL UNIT
PO Box 1511
Montgomery, AL  36102-1511
(334) 242-4392

17

**CERTIFICATE OF SERVICE**

      I hereby certify that I have, this 10th day of August, 2006, served a copy of the foregoing on the plaintiff, by placing same in the United States Mail, postage prepaid and properly addressed as follows:

Michael Bush, #149363
Limestone Correctional Facility
28779 Nick Davis Road
Harvest, AL  35749-7009

                      /s/ *J. Matt Bledsoe*
                      OF COUNSEL