# IN THE CIRCUIT COURT OF MONTGOMERY COUNTY
## FIFTEENTH JUDICIAL CIRCUIT OF ALABAMA

MICHAEL R. BUSH,                    )

    PETITIONER,                  )

VS.                                 )

                      )

PAUL WHALEY, DIRECTOR OF         )    CIVIL ACTION NO: CV-06-18
CLASSIFICATION FOR THE ALABAMA        [SUPPLIED BY CLERK]
DEPARTMENT OF CORRECTIONS,       )
DONAL CAMPBELL, COMMISSIONER OF
THE ALABAMA DEPARTMENT OF        )
CORRECTIONS, BILL PRYOR,
ATTORNEY GENERAL OF ALABAMA,     )
AND THE DIRECTOR OF THE
DEPARTMENT OF PUBLIC SAFETY,     )

    RESPONDENTS.                 )

---

## PETITION FOR WRIT OF CERTIORARI

---

COMES now the Petitioner, Michael R. Bush, pro se, and moves the Court to entertain this his Petition for Writ of Certiorari, and submits the same, to-wit:

### JURISDICTION

In absence of right to appeal or other adequate remedy, writ of certiorari lies to review rulings of an administrative board or commission. Ellard v State, 474 So.2d 743 (Ala.Crim.App.1984); Ex parte Board of Pardons and Paroles, 793 So.2d 774, 776 (Ala.2000). Thus, the subject matter of this petition is properly before this Court on certiorari.

EXHIBIT
A

### PARTIES

#### PLAINTIFF

Michael R. Bush is an inmate currently incarcerated within the Alabama Department of Corrections at Limestone Correctional Facility, 28779 Nick Davis Road, Harvest, Alabama 35749-7009.

#### DEFENDANTS

1. Paul Whaley is the Director of Classification for the Alabama Department of Corrections, 1400 Lloyd Street, P.O. Box 301501, Montgomery, Alabama 36130-1501.

2. Donal Campbell is the Commissioner of the Alabama Department of Corrections, 1400 Lloyd Street, P.O. Box 301501, Montgomery, Alabama 36130-1501.

3. Bill Pryor is the Attorney General for the State of Alabama, Alabama State House, 11 South Union Street, Montgomery, Alabama 36130-0152.

4. Director of the Alabama Department of Public Safety, 500 Dexter Avenue, Montgomery, Alabama 36130, whose true name is unknown to the Plaintiff.

### NATURE OF COMPLAINT

The Plaintiff, Michael R. Bush (hereinafter Bush), complains of his classification as a sex offender and his requirement to adhere to the provisions of §15-20-1 through §15-20-26, and §15-20-32 through §15-20-38, Code of Alabama (1975), as Bush has been afforded no due process and such classification is based on a nolo contendre adjudication from the State of Florida in 1992.

[2]

## STATEMENT OF THE FACTS AND BACKRGOUND

On or about January 16, 1992, Bush was pulled over for a traffic violation by the Escambia County Sheriff's Department in Pensacola, Florida. Bush was then arrested for an outstanding warrant dated February, 1984 accusing Bush of the crimes of Sexual Battery on a child and Lewd and Lascivious Assault on a child. Bush was transported to the Escambia County Jail.

After several court appearances, Bush was offered a plea bargain agreement by the State of Florida. This settlement involved a plea of nolo contendere to 8 years probation.

In plea discussions with appointed counsel, Bush expressed his reluctance to enter a plea because he knew he was innocent of the accusation. However, due to the fact that this charge was more than 8 years old, Bush really could mount no defense. Counsel at that time explained that a nole contendere plea was not an admission of guilt, but was simply a plea not contesting the matter. Bush entered the plea on counsel's advice.

Bush was released and moved back to Mobile, Alabama to his wife and children and continued on with his life.

Florida was to supervise Bush on probation, but due to Bush moving back to Alabama, Florida transferred said probation to Alabama. Alabama however never supervised Bush or placed him on probation because the State of Alabama does not recognize a nolo contendere plea as a conviction for a crime. Florida did not contest Alabama's decision nor did Florida require Bush to report back to Florida. In fact, when Bush was next arrested and released on unrelated charges, was notified by ADOC of Bush's new

felony charges, but Florida did not wish to detain or prosecute for violation of probation. Nothing would ever be mentioned to Bush of the Florida case until 2003.

Between 1992 and 1995, Bush was arrested on varying traffic charges and nothing was said of the Florida case. In 1995, Bush was arrested for 6 counts of negotiating worthless instrument. Those cases were nolle prossed but one, in which Bush pleaded guilty and received 30 days jail and one year informal probation. Also in 1995, Bush was charged with the felony offense of fraudulent lease of rental property. That case resulted in a 5 year sentence with 5 years probation. However, Bush's probation was revoked for a new charge of receiving stolen property, a misdemeanor assault and reckless endangerment. On the felony receiving charge Bush was sentenced to 10 years. Bush went to prison in Alabama and was released in 1997 on the remaining 10 year sentence on parole and was supervised on all charges together.

In 2003, Bush was charged and convicted of attempting to possess cocaine. He was sentenced to 15 years and placed on probation in lieu of prison. Bush violated that probation with a new charge of possession of cocaine. Sentence in that case was 15 years split one year to serve under §15-18-8, Code of Alabama (1975). Bush was then sent to Kilby Correctional Center to begin serving the balance of the 15 year sentence violated and the one year split.

During this processing into prison, Bush was told he was being classified as a sex offender and would be required to register under the provisions of Alabama's version of "Megan's Law" (§15-20-1 thru §15-20-38, Code of Alabama [1975]). Bush

informed the persons at Kilby of the nole contendere plea but to no avail. Bush is currently being denied lower custody classification and will be required to register as a convicted criminal adult sex offender. Of this Bush complains.

## S T A T E M E N T   O F   T H E   I S S U E S

### I.

BUSH HAS NOT BEEN PROVIDED DUE PROCESS IN BEING CLASSIFIED AS A SEX OFFENDER AND IN BEING REQUIRED TO REGISTER UNDER ALABAMA'S MEGAN'S LAW

### II.

BUSH IS NOT SUBJECT TO ALABAMA'S MEGAN'S LAW BECAUSE ALABAMA DOES NOT RECOGNIZE NOLO CONTENDERE PLEAS AS CONVICTIONS AND SUCH PLEAS CANNOT BE USED FOR ANY PURPOSE UNDER ALABAMA LAW

### III.

REQUIRING BUSH TO REGISTER UNDER ALABAMA'S SEX OFFENDER LAW VIOLATES EX POST FACTO AS BUSH'S PLEA WAS IN 1992, AND ALABAMA WAIVED ANY RIGHT TO SUBJECT BUSH TO SUCH PROVISION BY NOT INVOKING LAW DURING PREVIOUS ARRESTS AND CONVICTIONS

I.

## BUSH HAS NOT BEEN PROVIDED DUE PROCESS IN BEING CLASSIFIED AS A SEX OFFENDER AND IN BEING REQUIRED TO REGISTER UNDER ALABAMA'S MEGAN'S LAW

Upon initial classification at Kily Correctional Facility in 2003, Bush was told that he would be classified as a sex offender in the Department of Corrections, and would be further required to register under §15-20-1 thru §15-20-26 & §15-20-32 thru §15-20-38, Code of Alabama (1975). Said classification was due to the nolo contendere plea from the State of Florida in 1992. Bush contends that he is entitled to procedural and substantive due process of law before being so classified.

The Alabama Department of Corrections (ADOC) classification manual states as follows:

"In any case where an inmate is not convicted of a sex crime, but is being considered as a possible sex offender for the purpose of classification, it will be necessary to afford the offender due process in all such cases, i.e., serving written notice upon the inmate before conducting the classification/reclassification hearing. Such notice must include the following:

1. Provide specific information in writing as to what is being used to determine the status of the inmate. (The details of the PSI, letter from DA, arrest report, parole revocation report, ets.)

2. Cite the part of the classification manual which is being used.

3. Provide the time and date the review will be held.

4. Allow the inmate to present his/her version in writing as well as submit written documentation (no witnesses). This information will become part of the minutes of the hearing.

5. After a review of the inmate's statement and/or written documentation, a determination should be made whether the inmate should not be considered as a sex offender for the purposes of classification. The advance notification form as well as a copy of the minutes, the recommendation of the institution, and all other pertinent documents will be forwarded to the Central Review Board for a final decision. A copy of this decision will be provided to the offender.

In making classification recommendations or in reviewing such

recommendations, patterns of sexually deviant behavior will not
render an inmate a sex offender in itself, but the social history
will be considered as part of the inmate's overall unsuitability
for all less restrictive placements, programs, and custodies, to
include work release."

In this case, not one of the procedures cited above was
implemented. Bush was brought before the classification officer
at Kilby, was told he had a conviction for a sex offense, that he
would be classified as a sex offender, and that he would have to
register under Megan's Law. Said officer told Bush she would
notify the legal department of the ADOC and would get back with
him. After approximately one week, Bush was called back and told
he would be clasified within the ADOC as a sex offender, and he
would be required to register as a sex offender upon release.
Bush tried to present his side concerning the nolo contendere
plea and the time frames, but said officer would not listen and
told Bush to leave, that there was nothing you could do further.

First, Alabama does not recognize a nolo contendere plea as
a conviction and such cannot be used for any purpose. See Wright
v State, 38 Ala.App. 64, 79 So.2d 66, 69 (1954), cert. denied,
262 Ala. 420, 79 So.2d 74 (1955). Therefore, Bush's rights to due
process and a right to be heard are heightened.

The United States Court of Appeals for the Eleventh Circuit
held that an inmate "does have a liberty interest in not being
branded a sex offender." Kirby v Siegelman, 195 F.3d 1285, 1291
(11th Cir.1999). "[T]he stigmatizing effect of being classified
as a sex offender constitutes a deprivation of liberty under the
Due Process Clause." Id. at 1292.

In regard to the ADOC internal classification, Bush will be

prevented from any participation in work release, SIR, or PDL early release programs. Further, the Board of Pardons and Paroles will not consider inmates classified as sex offenders for the early parole docket. The Parole Board considers past criminal history as grounds to deny parole. See Major v Alabama Bd. of Pardons and Paroles, 675 So.2d 52, 55 (Ala.Crim.App.1995). Clearly such deprivations and the stigma placed on Bush were done so without Bush ever having meaningful notice, process, or opportunity to oppose him being labeled as a sex offender.

Alabama's "Megan's Law" provides that sex offenders cannot live in certain places, cannot work in certain places, must register anywhere they work or live, and must be subjected to the "stigma" for life. Again, Bush had a nolo contendere plea in the State of Florida that is prohibited from use in Alabama for any purpose (this issue is argued further herein). Bush has not been afforded any protections inherent in our system of due process in connection with his being required to register. The Alabama Department of Corrections in Bush's case was the "Responsible Agency" as defined in the statute, see (§15-20-21 [10]). Accordingly, it is the ADOC that is required to make such determinations before so labeling an offender as a sex offender. In this case, the ADOC used information gained in records to label Bush a sex offender and implemented the register mechanisms without fully investigating Bush's details or facts. Such action deprives Bush of substantive and procedural due process of law inherent to the concepts of life and liberty set out in the Fourteenth Amendment to the United States Constitution. Bush

contends, that if he had been afforded the due process requirements as set out in the ADOC classification manual, that he could have then proven that the Florida case was inapplicable under the law, and that he cannot be subjected to said Act because of nonretroactivity.

Bush has exhausted all available avenues to obtain a due process hearing, having met with Warden David J. Wise at Limestone Correctional Facility on December 19, 2003, where he was told there were no further avenues within the prison system he could take. Wise stated to Bush he knew a nolo contendere plea was inapplicable in Alabama, but that he could do no more. Wise told Bush to take his case to court because he has exhausted any adminstrative procedure he may have. (See Exhibit #1, Affidavit of Michael R. Bush).

"Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Doe v Pryor, 61 F.Supp.2d 1224, 1230 M.D.Ala.1999). "While it may seem that a convicted felon could have little left of his good name, community notification [and having to register as a sex offender] in this case will inflict a greater stigma than would result from conviction alone. Notification will clearly brand [Bush] as a "criminal sex offender" within the meaning of the Community Notification Act – a 'badge of infamy' that he will have to wear for at least 25 years – and strongly implies that he is a likely recidivist and a danger to his community." 61 F.Supp. at 1231. Due process has been implicated, and Bush is entitled to a hearing, with notice, to present his arguments opposing the Act.

II.

BUSH IS NOT SUBJECT TO ALABAMA'S MEGAN'S LAW
BECAUSE ALABAMA DOES NOT RECOGNIZE NOLO
CONTENDERE PLEAS AS CONVICTIONS AND SUCH
PLEAS CANNOT BE USED FOR ANY PURPOSE UNDER
ALABAMA LAW

The ADOC is using a nolo contendere plea from the State of Florida to invoke the provisions of Alabama's Megan's Law (see Exhibit #2). Bush contends that under Alabama law, a nolo contendere plea cannot be used in any civil or criminal proceeding as a "conviction". Thus, under the language of §15-20-21, an "Adult Criminal Sex Offender" is anyone "convicted of a criminal sex offense." and the provisions of §15-20-22 shall apply to anyone "as the result of a conviction for a criminal sex offense". Thus, a conviction under the law is a requisite to the application of the sex offender notification and registering mechanisms.

In McNair v State, 653 So.2d 320 (Ala.Crim.App.1992), the Court of Criminal Appeals of Alabama stated:

"Alabama, however, follows the minority rule that a conviction resulting from a plea of nolo contendere is inadmissible not only to prove the conduct underlying the conviction, but for all other purposes. See annot., 89 A.L.R. 2nd 540 at §43. In this jurisdiction, a conviction resting on a nolo plea is not admissible to render a witness incompetent to testify, Fidelity-Phenix Fire Ins. Co. of New York v Murphy, 231 Ala. 680, 686, 166 So. 604, 609, Cert. denied, 299 U.S. 557, 57 S.Ct. 199, 81 L.Ed. 410 (1936), to impeach a witness, Wright v State, 38 Ala.App. 64, 68, 79 So.2d 66, 69 (1954), cert. denied, 262 Ala. 420, 79 So.2d 74 (1955), to enhance punishment under the Habitual Offender Act, EX parte Jenkins, 586 So.2d 176, 177, (Ala.1991); Snipes v State, 404 So.2d 106, 108-09 (Ala.Crim.App.), writ quashed, 404 So.2d 110 (Ala.1981), to prove that the accused committed a similar, "signature" crime, Smith v State, 46 Ala.App. 157, 164, 239 So.2d 230, 236 (1970), or to prove that one is ineligible to hold public office, State ex rel. Woods v Thrower, 272 Ala. 344, 131 So.2d 420 (1961). In fact, as this Court recognized in Snipes v State, '[t]he rule in Alabama is that a

conviction based upon a plea of nolo contendere is inadmissible in evidence in other proceedings.' 404 So.2d at 109. See also Harrison v Jones, 880 F.2d 1279, 1280 (11th Cir.1989) (wherein the court observed that a conviction based on a plea of nolo contendere 'is clearly inadmissible for any purpose under Alabama law') (emphasis added)."

It is clear from McNair that the courts of Alabama consider a nolo contendere plea as no conviction "for any purpose". It is therefore manifest that no provisions of the Alabama sex offender statute can be applied to Bush's circumstances.

## BUSH HAS DEMONSTRATED HE IS NOT A DANGER TO SOCIETY

The Alabama Legislature's intent is to "identify, investigate, apprehend, and prosecute criminal sex offenders." (§15-20-20.1). In this case, Bush entered the plea in Florida in 1992. After that proceeding, Bush was released, without any requirement to inform any authority of his whereabouts. In fact, Bush moved to Alabama, and Alabama, based upon the plea of nolo contendere, would not even place Bush on probation and supervise him. In essence, Alabama felt Bush was not in need of supervision. Bush came into contact again and again with law enforcement officials, jail officials, and even prison officials. In each of these cases, Bush was released without any requirement regarding the 1992 Florida case. Bush has proven that he is not in any way a danger to society, and in any event is not subject to the provisions of the sex offender law because of the nolo contendere plea.

The language of the statutes do not in any way provide for subjecting a person released from prison on a nonsex offense to be subject retroactively to this provision of law. It defies

logic to construe the statutes any other way. Bush has lived in Alabama ever since and before the 1992 plea. He has been in contact with jail and prison officials, and was even released from prison in 1997 on parole. In at least two other criminal proceedings, Bush was supervised by the Alabama Board of Pardons and Paroles. No other "Responsible Agency", including the ADOC, ever mentioned the 1992 Florida case.

Long ago the Supreme Court of Alabama stated:

> "The doctrine in this jurisdiction is that the plea of nolo contendere, so called, is not in a strict legal sense a plea in the criminal law at all, but is a formal declaration by the accused that he will not contest with the prosecuting authorities under the charge. It is in the nature of a compromise between the State and the defendant and if accepted by the trial judge (which in his discretion he may or may not do) a judgment of conviction may be entered thereon. **It is not a plea of guilty** but is in the nature of a tacit confession and is limited to the particular case and only that case. **It has no effect outside of that case.** ... The life line of the rule is that the record of such a conviction is limited to the case and only the case in which the plea is entered; it is, in fact, not a conviction at all on a plea of guilty, this is an adjudication on a declaration by the accused in open court that, for reasons personally to himself (and there could be many bona fide, honest ones) he perfers not only to stand mute with respect to answering the charge, but also will not contest the prosecution's efforts with respect to it."

May v Lingo, 277 Ala. 92, 96 (Ala.1964) (emphasis added).

The United States Court of Appeals for the Eleventh Circuit addressed and upheld Alabama's holding on nolo contendere pleas, see Harrison v Jones, 880 F.2d 1279, 1283 (11th Cir.1989). Accordingly, the facts of this case and the cited authorities show clearly that a plea of nolo contendere cannot be used against Bush to subject him to the provisions of the sex offender notification and registering mechanisms.

Rule 410 (2) of the Alabama Rules of Evidence clearly states

that a nolo contendere plea is not admissible "in any civil or criminal proceeding". The sex offender notification and registering mechanisms have been held to be civil in nature. Therefore, Bush's nolo contendere plea is not in any way admissible or applicable in any proceeding, to include the sex offender statutes. To hold otherwise would violate equal protection of the law.

At the time Bush settled this case, there were no "collateral consequences or disabilities". Bush's numerous brushes with the law revealed no efforts from the States of Florida or Alabama to place any future burdens upon him from his 1992 nolo contendere plea. This Court is bound by the decisions of the Alabama Supreme Court, see McCray v State, 738 So.2d 911, 916 (Ala.Crim.App.1998): "This court and the trial court are bound to follow the holdings of the Alabama Supreme Court."

Following the doctrine on nolo contendere pleas, this Court is bound to grant Bush the relief requested herein and prohibit the State of Alabama from applying the provisions of the sex offender notification and registering mechanisms to him upon his release from prison.

Additionally, Bush requests this Court to order the ADOC to expunge any mention of a "conviction" in the 1992 Florida case from his prison file.

III.

REQUIRING BUSH TO REGISTER UNDER ALABAMA'S
SEX OFFENDER LAW VIOLATES EX POST FACTO AS
BUSH'S PLEA WAS IN 1992, AND ALABAMA WAIVED
ANY RIGHT TO SUBJECT BUSH TO SUCH PROVISION
BY NOT INVOKING THE LAW DURING PREVIOUS
ARRESTS AND CONVICTIONS

Bush entered a nolo contendere plea to attempted sexual battery in 1992. A nolo contendere plea is not an admission of guilt, and Bush entered that plea confident he would never suffer an residual consequences from that plea.

Eleven years later, Alabama is now trying to impose the stigmatizing and suffocating provisions of the sex offender notification act against Bush. Bush contends that the ex post facto prohibition applies to the circumstances of this case, and this Court is due to grant relief.

First Bush avers, this is a case where the "ex post facto claim is ripe." Neal v Shimoda, 131 F.3d 818 (9th Cir.1997). Bush is already being denied lower custody classification and certain programs because of the 1992 case. Secondly, Bush has already been entered into the system by the "responsible agency".

"Turning to the merits of the ex post facto claim, we are confronted with a two-pronged inquiry. First, the law must be retrospective, that is, it must apply to events occurring before its enactment; and second, it must disadvantage the offender affected by it." Neal Id. at 825. In terms of disadvantage, the Supreme Court has held that the Ex Post Facto Clause "is aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts." California Dep't of Corrections v Morales, 514 U.S. 499, 504 (1995) (quoting Collins

v Youngblood, 497 U.S. 37, 43 [1990]).

In Neal, the circumstances are distinguishable from this case because the plaintiffs in Neal complained of being made to participate in a prison treatment programs for sex offenders and admit they committed sex offenses. There was no ex post facto violation found in Neal because the program complained did "not criminlize conduct legal before its enactment." 131 F.3d at 827. Thus it is clear that the circumstances of each case must be considered in an ex post facto context.

In Stogner v California, 539 U.S. _____, 156 L.Ed.2d 544 (2003), the United States Supreme Court used a description by Justice Chase in Calder v Bull, 3 Dall 386, 391 (1798). It was stated in pertinent part that "I will state what laws I consider ex post facto laws, within the words and intent of the prohibition. ... Every law that alters the legal rules of evidence, and receives less, or different, testimony, that the law required at the time of the commission of the offence, in order to convict the offender. All these and similar laws, are manifestly unjust and oppressive." 156 L.Ed.2d at 552.

In Bush's 1992 plea, he was not required under the law to make an admission of guilt. Eleven years later now Alabama wants to consider Bush guilty. This is clearly a showing that Alabama is altering the legal rules of evidence (in considering Bush guilty), and considers Bush guilty on testimony less than the law required at the time.

In an alternate description, Justice Chase stated "at other times they violated the rules of evidence (to supply a deficiency

of legal proof)...which the courts of justice would not admit." 156 L.Ed.2d at 552. Simply put, imposition of Megan's Law to Bush based upon the 1992 nolo plea alters the entire scope of that legal proceeding because there was no admission of guilt then, so there should be no finding of guilt now.

"The presumption against the retroactive application of new laws is an essential thread in the mantle of protection that the law affords the individual citizen. That presumption is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older that our republic." Lynce v Mathis, 519 U.S. 433, 439 (1997) (internal citations omitted). The Supreme Court in Lynce addressed the retroactive application of a "penal" statute removing release credits from prisoners. Thus, "if the law increases punishment" is important. In Alabama, violations of Megan's law imposes punishments of misdemeanor and felony sentences. Thus, there is competent argument that the punishment is in fact increased. Bush, if subjected to the provisions of Alabama's Megan's law, could be given 15 years to life in prison if he intentionally or inadvertently violated said provisions.

The thin wire decisions allowing such "civil" penalties to be applied retroactively are all consistent that Megan's law imposes "no greater punishment". However, that is simply not the case in Alabama. In Lynce, the Court stated that "[i]n both the civil and criminal context, the Constitution places limits on the sovereign's ability to use its lawmaking power to modify bargains it has made with its subjects. The basic principle is one that protects not only the rich and powerful...but also the indigent

defendant engaged in negotiations that may lead to an acknowledgement of guilt and a suitable punishment." 519 U.S. at 439.

In considering the potential "penalties" of Megan's Law, it is therefore necessary to make an "objective appraisal of the impact of the change on the length of the offender's presumptive sentence." 519 U.S. at 443. The Court in Lynce ultimately found that the "statute has unquestionably disadvantaged petitioner because it resulted in his rearrest" 539 U.S. at 446. In essence, Bush argues that he is entitled to consideration of the fact that his nolo plea in 1992 did not contemplate some eleven years later him being subjected to a potential felony conviction for violation of a statute imposed upon him based upon conduct he never admitted guilt to.

In 1997, the Great Court upheld a Kansas law allowing indefinite civil committment of sex offenders with a "mental abnormality", see Kansas v Hendricks, 521 U.S. 346 (1997). That case is certainly distinguishable from this case because Bush has shown he is not a threat to anyone, and in fact, Alabama even declined to supervise Bush on his 1992 nolo plea. This case provides however an interesting juxtaposition in regard to the "civil" aspects of such a statute.

"The categorization of a particular proceeding as civil or criminal is first of all a question of statutory construction. .... We must initially ascertain whether the legislature meant the statute to establish 'civil' proceedings. If so, we ordinarily defer to the legislature's stated intent."

521 U.S. at 361. The Hendricks Court found that "committment under the [Kansas] Act does not implicate either of two primary objectives of criminal punishment: retribution or deterrence." 521 U.S. at 361-62. The Alabama statute and its placement are quite different and the objectives clear. Considering the same inquiry as that done in Hendricks, Alabama's statute not only implicates retribution, but clearly implicates deterrence.

In the Code of Alabama, Alabama's Megan's law is located in Title 15. Title 15 under the Alabama Code is entitled **Criminal Procedure**. Thus, it is not even logical to suggest under Alabama statute that §15-20-1 thru §15-30-38, Code of Alabama (1975) is "civil" in nature.

The Alabama legislature's "findings" (§15-20-20.1) are strong support for the contention that this is not a "civil" statute. To demonstrate that assertion, the legislature states that: "The system of registering criminal sex offenders is a proper exercise of the State's police power regulating present and ongoing conduct."; "[L]ack of information about criminal sex offenders who live within [a] jurisdiction and that the lack of information shared with the public may result in the **failure of the criminal justice system to identify, investigate, apprehend, and prosecute criminal sex offenders**." It is clear that this is not a civil intent. Its intent, while worded carefully to appear to promote public safety, is in fact to identify, investigate, apprehend, and prosecute criminal sex offenders by regulating their present conduct. That is exactly what a criminal statute does; it allows procedures to make citizens culpable for criminal

acts, therefore, it is punishment, and it is criminal in nature.

Further, the statute as written is clearly a deterrent and offers retribution. There are "criminal" penalties in this alleged "civil" statute: §15-20-22 (failure to provide DNA a class C felony); §15-20-23 (failure to notify of change of residence a class A misdemeanor); §15-20-24 (failure to comply with this provision a class C felony); §15-20-25.1 (nonresident offender violation a class A misdemeanor); §15-20-25.2 (failure to notify law enforcement a class A misdemeanor); §15-20-25.3 (sexually violent predator provision violation a class C felony); §15-20-26 (violations of employment and residency provisions a class C felony); §15-20-29 (parents of juvenile sex offenders liable for class A misdemeanor); §15-20-30 (parents of juvenile sex offender liable for class C felony). Thus, it appears this supposedly "civil" statute has substantial criminal penalties.

The Hendricks Court gives a guide for determining whether a statute is "civil". In juxtaposition with the Hendricks inquiry, Alabama's sex offenders statute rings loud and clear as a set of criminal statutes promulgated to jail or imprison adult and juvenile criminal sex offenders. Therefore, the statute cannot be applied retroactively. The Supreme Court found that "Although we recognize that a 'civil' label is not always dispositive, ... we will reject the legislature's manifest intent only where a party challenging the statute provides 'the clearest proof' that 'the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention' to deem it civil. ... In those limited circumstances, we will consider the statute to have

established criminal proceedings for constitutional purposes."
521 U.S. 346, 361 (internal citations omitted). Thus we have
direction from the Supreme Court as to "civil" or "criminal"
nature of the statutes. Alabama located its statute in the
"Criminal Procedure" section of its law. The criminal penalties
are clear from the foregoing description of the consequences for
any violation.

It is further important to ponder the stigma and burdens
placed on anyone subject to Alabama's version of the sex offender
law. "It is among the broadest and most restrictive of such laws
in the nation. It requires individuals convicted of certain
offenses to register with law enforcement officials, and it
requires those officials to notify members of the public whenever
a registrant moves into their community. It also places
significant restrictions on where and with whom a registrant may
live and work." Doe v Pryor, 61 F.Supp. 1224, 1226
(M.D.Ala.1999). "[T]he Community Notification Act will foreclose
[Bush's] freedom to take advantage of housing and employment
opportunities well beyond those expressly forbidden. There can be
little doubt that prospective employers and sellers or lessors of
real estate will think twice before doing business with an
individual deemed to be a likely recidivist and a danger to his
community, and, because the Act allows government officials to
notify communities ... it is likely that at least some of these
prospective business partners will become aware of the State's
warning." 61 F.Supp.2d at 1232. There is no doubt that the
punishment of Alabama's version of Megan's Law is two-tiered. Not

only will Bush have to carry the social, economical, and stigmatizing burden of being called a "sex offender", he will be subject upon violation of the Act to either one year for a misdemeanor or up to life for a felony violation (based upon Bush's priors and §13A-5-9) of any of the nine (9) statutes under this provision which constitute a crime. Every indicator points to the proposition that Alabama's sex offender statute is truly a set of criminal statutes couched in the legislature's civil "findings".

In Allen v Illinois, 478 U.S. 364 (1986), Justice Stevens stated in dissent concerning such statutes that "it is the substance of the ... procedure, rather than its title, that is relevent to our inquiry. Neither the word 'civil' nor the unsettling term applied by the State - 'sexually dangerous person' - should be permitted to obscure our analysis." 478 U.S. at 376-77.

Finally, Bush contends that Alabama cannot now after eleven years (and after having refused to even supervise him) purport to label him a sex offender. Bush has lived in Mobile, Alabama before and since 1992. He has encountered law enforcement, ADOC, and parole board officials numerous times. It is a little late in the game to attempt to restrict Bush in his ability to live, work, and mingle in society based on something that happened long before the statute ever came into being. The facts of this case prove Bush is not any danger to his community. The details of the 1992 plea in Florida have not changed nor been modified since 1992. The founding fathers of this great country would never

envision a system of justice where a man makes one mistake in his life (or is unjustly convicted) and is branded for 25 years because of what happened. Those same great men were in fact driven to revolution by an oppressive mother government imposing just such injustice on the colonies. The prohibition against ex post facto must apply here; Bush is not subject to the provisions of this law because Alabama has effectively bypassed any opportunity to impose this law upon him.

## C O N C L U S I O N

Bush cannot either be classified as sex offender by the ADOC or by the provisions of Alabama's sex offender laws. In accordance with the authorities cited herein, Bush requests that this Court grant his relief by issuing an order to the defendants and the Alabama Department of Corrections to remove his name from the rolls of the sex offender list and afford the full eligibilities and privileges afforded other persons similarly situated.

The nolo plea is not even recognized in this State as a conviction; the Alabama Board of Pardons and Paroles would not supervise Bush in relation to the nolo plea transferred from Florida. In essence, under Alabama law, that case never happened so it cannot now be used to forever brand Bush a sex offender.

## AFFIRMATION AND OATH UNDER PENALTY OF PERJURY

I, Michael R. Bush, do hereby certify, swear anf affirm under the penalty of perjury that the facts contained in the foregoing writ of certorari are true and correct to the best of my knowledge. I further certify, swear and affirm that I believe I am entitled to redress on the matters complained of herein and that this action is being filed in good faith to obtain relief to which I am entitled. I further certify, swear and affirm that this action is the only means available under the circumstances of the facts of this matter, and I seek judicial review of my being classified as a sex offender when I am not a sex offender.

### CERTIFICATE OF FILING

I, Michael R. Bush, do hereby certify that on the date below I filed my "Petition for Writ of Certiorari" in the Circuit Court of Montgomery County, Alabama with a true copy included for service. I am not because of my poverty able to provide any more copies of my complaint. The ADOC charges fifty cents (¢.50) per page as a copy fee and I cannot afford that costs.

EXECUTED and DONE on this the ___29___ day of _December_, 2003.

_Michael R. Bush_

Michael R. Bush-AIS#149363
Limestone C.F. Dorm 15
28779 Nick Davis Road
Harvest, Alabama 35749-7009

(EXHIBIT 1.)

## A F F I D A V I T   O F   M I C H A E L   R .   B U S H

STATE OF ALABAMA        )
COUNTY OF LIMESTONE    )

Before the undersigned Notary Public in and for said county and State personally appears Michael R. Bush, who after first being duly sworn, deposes and says as follows:

On or about January 16, 1992, I was stopped by the Escambia County Sheriff's Department, Pensacola, Florida, for a traffic violation. During this stop the officer told me I had an outstanding warrant for sexual assault on a child and lewd and lascivious assault on a child. I was placed under arrest and transported to the Escambia County Jail.

Later I made several court appearances and was appointed counsel. During all these proceedings I professed my innocence to the courts and my appointed counsel. During the proceedings and during meetings with appointed counsel I diligently tried to mount a defense on these 8 year old charges, but, to no avail, due to my incarceration and the fact that my counsel was totally ineffective in assisting me in my defense.

During the month of May, 1992, I met with my appointed counsel at which time I was informed by my appointed counsel that the State of Florida was prepared to offer a plea bargain in my case. This plea bargain would allow me to enter a plea of nolo contendere to an offense of attempted sexual battery.

At this point I was reluctant to plea to a crime for which I never committed. My appointed counsel informed me that due to the fact that the arrest warrant and charges were over 8 years old there would be little if any defense available at a trial. I still professed my innocence in this matter. At that point my appointed counsel informed me that if I insisted on proceeding to trial the State can and would sentence me to a prison sentence of a minimum mandatory 25 years. I admit at that point I was scared and confused about what to do. I was not guilty of any of these charges.

After continued discussion with my appointed counsel, it was explained further that a plea of nolo contendere is not in any way an admission of guilt but it is merely allowing me and the State of Florida to dispose of the matter without me pleading guilty to a crime I couldn't defend myself against due to the length of time (8 years).

Reluctantly, I entered the plea of nolo contendere to the charge of attempted sexual battery in court. I was sentenced to 8 years probation and released from jail. Being able to walk out of jail played a major part in my decision to enter the plea.

Upon my release I reported to the probation office on the following day. During the interview I explained to my probation officer that my wife and kids had moved back to Alabama during my incarceration. My probation officer, understanding my situation about my family moving back to Mobile, Alabama, stated he would be transferring my probation to Alabama and I needed only to call him the following month. The following month I did as instructed and called my probation officer. He informed me that he had submitted my paperwork to Alabama, but had received no reply. He instructed me to submit a monthly report; I did as he instructed.

The second month, I notified my Florida probation officer that I still had not received any notice from Alabama about supervising me on probation. He told me to be patient and I would be contacted by Alabama to be supervised.

When the time to report for the third month came around, I still had not been contacted by Alabama. I called the probation officer in Florida again. Somewhat irritated, he told me to call the Alabama Board of Pardons and Paroles and check on the status of my supervision. I called the Mobile, Alabama office of the Board and Pardons and Paroles and was informed that they would not be supervising me due to the plea of nolo contendere.

On the fourth month I told my Florida probation officer of what the Mobile, Alabama office told me. The Florida probation officer told me that I need not keep on contacting him any longer and that Alabama was in charge of my case now. I never heard anything else about the matter.

During and after this time I have came into contact with law enforcement, court, and pardon and parole authorities many times. In 1995 I was placed on probation, was later revoked, and taken into the custody of the Alabama Department of Corrections. Nothing was said about the Florida case. After my incarceration I was released on probation and parole on two different sentences running concurrent. This release was in 1997, and I finished my probation and parole without problem.

During 2002, I was again arrested, this time for attempting to possess cocaine. I entered into a plea agreement with the State of Alabama for a 15 year sentence suspended to 5 years probation. I was again under the supervision of the Alabama Board of Pardons and Paroles. Again, nothing was said by Alabama authorities concerning the Florida settlement.

During 2003 I was arrested again for possession of cocaine in which my 2002 case was revoked and the court sentenced me to complete the 15 sentence that had been suspended. In addition, in the new case, I was sentenced to a 15 years split one year to serve with 5 years probation.

After entering the Alabama Department of Corrections at Kilby Correctional Facility I was told that the 1992 nolo contendere plea would in fact be used against me to classify me as a sex offender and they would require me upon release to register under Alabama's "Megan's Law". The classification officer told me she would contact Central Records of the ADOC and notify me of the final decision.

After about a week I was called back to classification and was told that the decision was that I would be classified as a sex offender and that upon my release I would have to register under "Megan's Law". I pleaded my case with the classification officer, but she told me to leave and that I had no say-so in the matter.

Several weeks later I was transferred to Limestone Correctional Facility. Upon intake I spoke with classification about this matter and was told he would check into it. Nothing more was said.

I attempted several times to speak to classification about this matter by inmate request form via internal institutional mail, and have never received a reply.

On or about 12/19/03 I spoke with David J. Wise, Assistant Warden of Limestone Correctional Facility. He said he was aware that a nolo contendere plea is not recognized in Alabama. He then informed there was no available remedy for me with the administration, and that if I wished to pursue it any further, I would have to do so in the courts.

### FURTHER AFFIANT SAITH NOT

SWORN to and subscribed before my hand and seal on this the ____29____ day of December, 2003.

_____          _____
NOTARY PUBLIC                                MICHAEL R. BUSH, AFFAINT

MY COMMISSION EXPIRES ___9 / 27 / 06___

( EXHIBIT 2. )

Cone/12867                                    Judge Kuder/vb/220035

## JUDGEMENT OF GUILT
## AND PLACING DEFENDANT ON PROBATION

STATE OF FLORIDA                          In The Circuit Court
VS Plaintiff                              of Escambia County, Florida
MICHAEL RUSSELL BUSH                      Case No. 92-0290
              Defendant

This cause coming on this day to be heard before me, and you, the defendant MICHAEL RUSSELL BUSH being now present before me, and you having: ENTERED A PLEA OF NOLO CONTENDRE TO the offense of Attempted Sexual Battery/Use of Force the court hereby adjudges you to be guilty of said offense; and

It appearing to the satisfaction of the Court that you are not likely again to engage in a criminal course of conduct, and that the ends of justice and the welfare of society do not require that you should suffer the penalty authorized by law:

Now, therefore, it is ordered and adjudged that the imposition of sentence are hereby withheld, and that you are hereby placed on probation for a period of eight (8) years under the supervision of the Department of Corrections and its Officers, such supervision to be subject to the provisions of the laws of this State:

It is further ordered that you shall comply with the following conditions of probation:
(1)  Not later than the fifth day of each month, you will make a full and truthful report to your Probation Officer on the form provided for that purpose.
(2)  You will pay to the State of Florida the amount of **Fifty Dollars ($50)** per month toward the cost of your supervision unless otherwise waived in compliance with Florida Statutes.
(3)  You will not change your residence or employment or leave the county of your residence without first procuring the consent of your Probation Officer.
(4)  You will neither possess, carry or own any weapons or firearm without first securing the consent of your Probation Officer.
(5)  You will live and remain at liberty without violating any law. A conviction in a court of law shall not be necessary in order for such a violation to constitute a violation of your probation.
(6)  You will not use intoxicants to excess; nor will you visit places where intoxicants, drugs or other dangerous substances are unlawfully sold, dispensed or used.
(7)  You will work diligently at a lawful occupation and support any dependents to the best of your ability as directed by your Probation Officer.
(8)  You will promptly and truthfully answer all inquiries directed to you by the Court or the Probation Officer, and allow the Officer to visit in your home, at your employment site or elsewhere, and you will comply with all instructions he may give you.
(9)  The court retains jurisdiction to place you in the Probation and Restitution Center upon recommendation of your Probation/Community Control Officer without the finding of Violation of Probation/Community Control.
(10) You shall submit to and pay for urinalysis as directed by your probation officer.
(11) Pay $27 .50 cost.
(12) Pay $30.00 State Attorney fee.

(13)  Make restitution as determined.

**The defendant received ten (10) years State Prison which was suspended.**

You are hereby placed on notice that the Court may at any time rescind or modify any of the conditions of your probation, or may extend the period of probation as authorized by law, or may discharge you from further supervision; and that if you violate any of the conditions of your probation, you may be arrested and the Court may revoke your probation and impose any sentence which it might have imposed before placing you on probation.

It is further ordered that when you have reported to the Probation Officer and have been instructed as to the conditions of probation you shall be released from custody if you are in custody and if you are at liberty on bond, the sureties thereon shall stand discharged from liability.

It is further ordered that the Clerk of this Court file this order in his office, record the same in the Minutes of the Court, and forthwith provide certified copies of same to the Probation Officer for his use in compliance with the requirements of law.

DONE AND ORDERED IN OPEN COURT this 27th day of May, 1992.

_____
JUDGE

I acknowledge receipt of a certified copy of this order and that the conditions have been explained to me.

Date: _____  Probationer _____

Instructed by: _____

Original:  Court
Copies:    Probationer/File

DC-900B
Rev 6/85

CERTIFIED TO BE A TRUE COPY
THE ORIGINAL ON FILE IN THIS OFFICE
UNLESS MY HAND AND OFFICIAL SEAL
ERNIE LEE MAGAHA, CLERK
CIRCUIT COURT AND COUNTY COURT
ESCAMBIA COUNTY, FLORIDA